## Edgar Bristol v. John Braidwood.

*Replevin : False representations: Prior incumbrance: Burden of proof: Evidence.* Where one who has traded a pair of colts for a mortgage and a small sum of money, tenders back the mortgage and money, and brings replevin for the colts, claiming that the defendant falsely represented the mortgage to be a first mortgage, and good, it is incumbent upon him to show that there was a prior incumbrance on the lands such as to affect the title and impair his security ; and the mere proof of a prior mortgage executed by a different person, which had been foreclosed, and a sheriff's deed executed, in the absence of any showing that such prior mortgagor ever owned the land, or had any connection with the title, is not sufficient ; nor did this make out a *prima facie* case on the point, so as to shift the burden of proof upon the defendant to show that it did not affect the title.

*False representations: Value: Caveat emptor.* The representations made as to the mortgage at the time of the trade, so far as they related to its value, are held to be mere expressions of opinion or matter of commendation by the vendor, to which the principle of *caveat emptor* applies.

*False representations : Prior mortgage: Fraud.* It seems that if the defendant, for the purpose of obtaining the plaintiff's property for the mortgage, asserted to him, as a fact of which he professed to have knowledge, that there was no prior mortgage upon the land, when he knew or had good reason to believe the contrary, or no good reason to believe his assertion to be true, he would

be liable as for a fraudulent representation, and the plaintiff might have re-
scinded the contract and reclaimed his property; and this, without reference to
the personal responsibility of the mortgagor, or the value of the land.

But a representation in reference to a prior mortgage, "that there was none
so far as he knew," is not a distinct representation of the fact one way or the
other; and the whole import of it is, that he did not know whether there
was a prior mortgage or not, and this was enough to fairly put the plaintiff on
inquiry to ascertain the fact for himself.

Whether or not, in case of such a representation, the defendant could be held
liable, under clear and distinct proof that he in fact did know there was a
prior mortgage, he certainly cannot upon proof simply that some one had
told defendant he had heard there was a prior mortgage.

*Heard October 14 and 15.    Decided October 21.*

Error to Lapeer Circuit.

*Gaskill & Geer*, for plaintiff in error.

*J. M. Wattles* and *M. E. Crofoot*, for defendant in error.

CHRISTIANCY, CH. J.

This was an action of replevin brought by Braidwood
against Bristol in the circuit court for the county of Lapeer,
for a pair of colts which the former had sold or traded to
the latter for forty dollars in cash and a mortgage and
accompanying note of one Henderson, given not long before
to one Goetchius, for four hundred dollars at ten per cent.
interest, upon which two hundred and fifty dollars had
been paid and endorsed.    This mortgage the defendant
(below) represented to the plaintiff to be "as good as the
wheat," "as good as the money to any one who did not
want to use the money; for," said he, "it is drawing ten per
cent. interest."    And being asked by plaintiff if there was
any mortgage ahead of this, he replied that there was not,
as far as he knew.

The plaintiff, about four days after the trade, claiming
to have ascertained that there was a prior mortgage upon
the land, executed by one Augustus Hilliker to one James
Lee for some fourteen hundred dollars, which had been fore-
closed and a deed given by the sheriff, the right to redeem
from which would expire in about twenty-three days, and

claiming to have been defrauded by the representations of the defendant, tendered back to him the mortgage and the forty dollars (which the defendant refused to receive), and demanded his colts, thus attempting to rescind the contract.

If the representations complained of were such as to entitle the plaintiff to rescind the contract and bring replevin, on the ground that they were false and fraudulent in reference to a prior incumbrance, it is very clear that this could be so only because such prior incumbrance affected the title upon which the Goetchius mortgage (transferred to plaintiff) depended, and because its enforcement might defeat the latter in whole or in part. For, though such prior mortgage might describe the same land, yet, if executed by some one having no connection with the real title, but outside of the chain of title, it could in no way defeat or affect the Goetchius mortgage or impair its security.

It was therefore incumbent upon the plaintiff not only to show, *first*, a prior mortgage describing the land, but, *second*, that it was connected with, and affected the title in such a manner as to impair the value of the Goetchius mortgage. All he did was to prove by the record the existence of a prior mortgage describing this land, executed by Augustus Hilliker to James Lee, and that this mortgage had been foreclosed, and a sheriff's deed executed to one Baldwin Copeland. He entirely failed, and did not even attempt, to show that Hilliker, who executed this prior mortgage, ever owned the land, or had any connection with the title.

Goetchius, however, was sworn for the defense, and gave some testimony tending to show that he, when he took his mortgage from Henderson, and afterwards, recognized the existence of a prior mortgage affecting the value of his security; and it might have been a question whether this evidence might not have warranted a jury in finding that the prior mortgage did affect the title and impair the secu-

rity of the Goetchius mortgage. But this cannot avail the
the plaintiff below upon this record, since the court, in
denying the request of the defendant for a contrary charge,
instructed the jury that the mere proof of the existence of
the prior mortgage describing the same land, and the sher-
iff's deed on foreclosure, made a *prima facie* case that there
was a prior incumbrance upon the land, and threw upon
the defendant the burden of proving that it did not affect
the title. This we think was clearly erroneous. The
burden of proof was upon the plaintiff throughout, to show
that it did affect the title, and not upon the defendant to
prove that it did not.

This disposes of the case; but as a new trial is to be
awarded, it is proper to notice another feature of the case,
which will be likely to appear upon the new trial substan-
tially as it does here; as the plaintiff and defendant sub-
stantially agree upon what the representations of the
defendant were upon the points we have noticed above.
These representations, so far as material to the question
of fraud and the right of the plaintiff to rescind, I have
set forth above; and so far as they relate to the *value* of
the mortgage,—irrespective of the question of a prior mort-
gage,—they should, I think, be looked upon merely as the
expression of an opinion, or as a matter of commendation
by the vendor, the defendant. Its value also would
depend not merely on the value of the mortgage security,
but upon the personal responsibility of Henderson, whose
note accompanied the mortgage, and so far as the mere
question of value is concerned,—if there was no previous
mortgage,—it was a question upon which the plaintiff, in
the exercise of ordinary diligence, should have ascertained
for himself, and upon which he would have been as com-
petent to judge as the defendant. And upon this ques-
tion there is nothing in the case which should, as it seems
to me, relieve the plaintiff from the application of the
principle of *caveat emptor;* especially as it does not appear,
and is not pretended, that the mortgage would not have

been perfectly good, and as valuable as represented, if there had been no prior mortgage upon the land.

The whole question of misrepresentation and fraud must therefore turn upon the representation in reference to the fact, whether there was a prior mortgage; and upon this point it may, for the purposes of this case, be admitted that if the defendant, for the purpose of obtaining the plaintiff's property for the mortgage, asserted to him, as a fact of which he professed to have knowledge, that there was no prior mortgage upon the land, when he knew, or had good reason to believe the contrary, or no good reason to believe his assertion to be true, he would be liable as for a fraudulent representation, and the plaintiff might have rescinded the contract and reclaimed his property. And in such a case it would not be material whether Henderson's note, without the mortgage, would be good, or whether the land was worth more than enough to pay off both the mortgages (though it would be otherwise where he retained the property and brought his action for damages), because, notwithstanding these facts, the plaintiff might not have consented to part with his property for the mortgage, and the plaintiff was entitled to have substantially the thing bargained for, and such as the defendant represented it to be, and if it turned out to be essentially different, he would have a right to rescind, by tendering back the mortgage and demanding his property.

I cannot, however, assent to extend the maxim *caveat emptor* so far as to hold (as seems to have been held in some cases) that where a vendor of real estate, for the fraudulent purpose of effecting a sale, makes a positive representation of particular facts respecting the title, which he knows, or has good reason to believe to be false, and which turn out to be false in fact, but which, if true, would make the title good, he cannot be held liable in an action for the fraud, or the vendee can have no right to rescind, because he had it in his power to ascertain from the records the truth or falsehood of the representation,

and the true state of the title, but has neglected to do so, in reliance upon the truth of the vendor's representation of the facts. There may be good, prudential reasons why, when I am selling you a piece of land, or a mortgage, you should not rely upon my statement of the facts of the title, but if I have made that statement for the fraudulent purpose of inducing you to purchase, and you have in good faith made the purchase in reliance upon its truth, instead of making the examination for yourself, it does not lie with me to say to you, "It is true that I lied to you, and for the purpose of defrauding you, but you were guilty of negligence, of want of ordinary care, in believing that I told the truth; and because you trusted to my word, when you ought to have suspected me of falsehood, I am entitled to the fruits of my falsehood and cunning, and you are without a remedy."

But these questions are no further involved than this: if no action could be maintained and no contract rescinded on the ground of such fraudulent misrepresentation of facts regarding the title of real estate, simply because the vendee neglected to examine the records, the present action could not be maintained, whatever the representations may have been. But what were the representations in regard to the existence of a prior mortgage? When asked if there was any such, the defendant simply says, "there is not, that I know of." He does not attempt to make any representation whatever of the fact, whether there was such prior mortgage or not; and the whole import and fair understanding of the representation was, as it seems to me, that he did not know what the fact was, whether there was or was not such prior mortgage; but only that he did not know of any. This was fairly putting the plaintiff upon inquiry, to ascertain the fact for himself. I will not undertake to say,—nor does this case call for an opinion upon the point,—that if the defendant knew at the time, of a prior mortgage affecting the title of the property, he might not be held liable for a fraud, if, for a fraudulent purpose,

he stated that he did not know it;—though this might be going a great ways, when the plaintiff was thus fairly put upon inquiry by being told simply that he did not know of any. But was there any evidence fairly tending to show that the defendant did know of the existence of the prior mortgage?

The only evidence which can possibly be claimed to have this effect, is that of Charles Sheine, who testifies that, in a conversation with the defendant in reference to purchasing the Goetchius mortgage,—some time prior to the trade with the plaintiff,—he [Sheine] told the defendant that he had heard that the mortgage was not good, that he had heard that there was a mortgage ahead of it. This was not only hearsay, but second-hand hearsay, which, if the defendant was not entitled to treat as a mere idle rumor for all purposes, cannot, as it seems to me, have any fair tendency to show that he had falsely or fraudulently misrepresented when he told the plaintiff he did not know of any mortgage. I see nothing in this evidence calculated to induce the belief of the defendant in the existence of such a prior mortgage.

The judgment must be reversed, with costs, and a new trial awarded.

The other Justices concurred.