WILLIAMSON v. HANNAN.

1. FRAUD—MISREPRESENTATIONS—MATERIALITY—ROOMING HOUSE.
   Representations in the sale of a rooming house business and furniture as to the income and respectability of the place, if false, were material.

2. SAME—BROKERS—CONSPIRACY—EVIDENCE—SUFFICIENCY.
   In an action by the buyer against the broker, his agent and the owner of a rooming house business for fraud in the sale of same, evidence examined, and held, insufficient to sustain the allegation that the representation that the neighborhood was respectable was false, that the broker's agent represented, as a fact, the income, and that the owner and broker's agent were in confederation to deceive plaintiff.

3. SAME—NOTICE—SILENCE—EVIDENCE.
   In the absence of evidence that defendant broker's agent had any knowledge of the reputation or character of any of the roomers of a rooming house, his silence on that subject, and as to whether they would remain in the house for any length of time, was no evidence of fraudulent design on his part, in making a sale of the business.

4. SAME—CONTRACTS—DISAFFIRMANCE—TRIAL.
   In an action for damages for fraud and deceit in the sale of a rooming house business, it is immaterial, as affecting

the cause of action, whether plaintiff did or did not disaffirm the contract, hence the action of the court below in submitting that question to the jury, limiting the damages to the amount paid, with interest, was not reversible error.

5. SAME — BROKERS — MISREPRESENTATIONS — INTENT — TRIAL — INSTRUCTIONS.

In such action, the broker and his agent being joint defendants with the owner, requested instructions that the broker and his agent could not be held liable unless the statements made by the agent were known by him to be false and were made with intent to deceive and defraud, should have been given.

Error to Wayne; Chester, J., presiding. Submitted April 13, 1917. (Docket No. 148.) Decided September 27, 1917. Reargued February 1, 1918. Former opinion vacated March 28, 1918.

Assumpsit by Margaret Williamson against W. W. Hannan, William Devlin, and others for fraud and deceit in the sale of a rooming house business. Judgment for plaintiff. Defendants bring error. Reversed as to all but defendant Devlin.

*Stellwagen & MacKay* and *Daniel E. Wade,* for appellants.

*Edward Pokorny,* for appellee.

In this cause an opinion affirming the judgment was filed September 27, 1917. The opinion has not been published, a motion for a rehearing having been made October 6, 1917, by defendants other than Devlin, and a rehearing granted. Being convinced that a wrong conclusion was reached, the former opinion is withdrawn, the following to stand as the opinion of the court:

In a declaration, to which no formal objection was made, plaintiff alleges, in substance and effect, that

defendants, on February 23, 1914, with intent to cheat and defraud her, and induce her to purchase from the defendant Devlin the good will and contents of a certain rooming house—furniture, fixtures, carpets, rugs, etc.,—at No. 485, Grand River avenue, Detroit, and to pay to said Devlin therefor the sum of $1,650, falsely and fraudulently represented to her

"That the said rooming house business was located in a desirable and respectable neighborhood, and the roomers in said rooming house were respectable and hard working people, and that the income of said rooming house business was two hundred and fifteen ($215.00) dollars per month; whereupon and by means of said false and fraudulent representations of the said defendants the said plaintiff was induced to and did purchase said rooming house business and contents therein of the said defendant, William Devlin, and then and there paid to said defendant, Martin F. Gainey, in the form of a check payable to the order of W. W. Hannan, for and on behalf of the said defendant, William Devlin, for the purchase price of said rooming house business and contents therein, a large sum of money, to-wit, nine hundred ($900.00) dollars, and for the balance of the purchase price to-wit, seven hundred and fifty ($750.00) dollars, gave a chattel mortgage on the contents of said rooming house business to said defendant, William Devlin."

The alleged fraudulent representations are negatived, it being alleged that the rooming house is in an undesirable and disreputable neighborhood, the roomers therein drunkards, and the female roomers women of disrepute and bad character; the monthly income was only $125 a month. Damages "in her property rights" to the amount of, to wit, $2,000, are alleged, and she pleads 3 Comp. Laws, §§ 10421, 10422 (3 Comp. Laws 1915, §§ 12350, 12383), as a provision permitting her to maintain an action of assumpsit to recover said damages. The defendants are W. W. Hannan, his clerk and agent, Gainey, and Devlin, the owner of the property. Devlin listed the property for

sale with Hannan, who conducts a rental agency and real estate exchange. As is usual, a card was made for the use of the office, describing the property. This was but one of several like properties so listed for sale with the defendant Hannan.

The plaintiff gave testimony tending to prove that she is a widow, with four children, and that she came from Boston to Detroit February 12, 1914, with the purpose of buying a lodging house. By a friend she was introduced at the Hannan office, made her desire known and that she had $1,000 in cash. She did not see and did no business whatever with Mr. Hannan personally. Mr. Gainey gave her several addresses, and with her friend plaintiff visited three of them and found them not satisfactory. She returned to Mr. Gainey, who gave her other addresses and took her to see several houses. She was not pleased with them. Then he took her to No. 485, Grand River avenue, where she met Mr. Devlin. There were 19 rooms in the place, which was in the business section, and occupied two floors above the street floor. She saw all of the rooms, all of which were furnished. She asked Mr. Devlin if it was a respectable house and he replied, "thoroughly so." She was told by Mr. Devlin, "You never hear or see any more than you do now," and that the roomers were steady roomers, all of them having been there when a Mrs. Shoemaker, of whom he had purchased, had the house. Plaintiff liked the rooms, and it appeared a respectable place. She, however, went to see three other rooming houses, but they did not please her as well as 485 Grand River, which she was told she could buy for $1,600. This occurred on Monday, February 16. Monday evening, plaintiff went to the head of the Young Women's Christian Association and talked with her, and with her visited No. 485 Tuesday morning. She had lived in Detroit seven years, and expressed the opinion that the neigh-

borhood was respectable. However, plaintiff asked to
see other rooming houses and with Mr. Gainey saw one
other. She suggested then that an inventory be taken
of No. 485. One was taken, everything being listed.
Everything was inspected by her, or was open for in-
spection. She was told what each room rented for,
what the lease she would assume called for, and what
the other fixed expense charges were, as for lights,
water, etc. At her request, Mr. Gainey made some
figures showing income and disbursements, according
to which the rents then were $215 and the expenses
$130 monthly. Gainey made the figures from Devlin's
statements, made in her presence. She was to have
possession when it appeared that her check had been
honored. She did not close the transaction or sign any
papers until Tuesday, February 24. On the morning
of that day, she, with Gainey and Devlin, went a sec-
ond time over the inventory. She went over herself
the rents and expenses as they had been represented.
She could not, she says, arrive at the result Gainey
had arrived at. She then, she says, on Tuesday after-
noon, before taking possession, before executing the
necessary papers, told Mr. Gainey that he had cheated
her and that she wanted her money back.

"I says, 'There isn't the money in that house you
said there was for me,' and he says, 'Woman,' he says,
'you are excited,' he says. 'With them rooms empty
that stood upstairs,' he says, 'You have $65.' 'Well,
then,' I says, 'I must have missed some of the rooms,
for I couldn't get it like that.' "

He asked her to sign the papers, she said she was
too nervous, but signed them, but did not know what
she signed. Then she went up and took possession.
One roomer who paid $12 a month for her suite moved
out on February 25. On that day she saw Mr. Gainey
and told him she was cheated. He said she was not
and went with her to see the friend who had introduced
her to the agency. Gainey said to the friend,

" 'Mrs. Williamson thinks she has been cheated with the house but she hasn't. I. will sell it again and get more than she paid for it.' I said 'Mr. Gainey, sell it. I only want what I gave you.' "

Plaintiff later became convinced, she says, that some of the women roomers were not respectable. Some of them drank beer and smoked cigarettes in their rooms. Telephone calls for some of them were not infrequently answered by her, and she heard parts of conversations they carried on by 'phone. Others of the roomers moved out. The income for the first month was $110, the second month $60, the third $66.50. She had agreed to make deferred payments for the furniture, and had the rent to pay. In March, she called on Devlin, telling him "to come and take his stuff, I wanted nothing to do with it." The landlord asked her to move because her rent was not paid. She did move, with the furnishings, to Brooklyn avenue, and later on, when Devlin learned where she was, he replevined his property and sold it. Hannan, agent for Devlin, received out of the money paid by plaintiff a commission for services.

When plaintiff rested, motions were made to direct a verdict for defendants, and were overruled. The motions were renewed and denied when defendants rested. Plaintiff then moved, and over objection was granted leave, to amend the declaration by an allegation that on or about February 26th plaintiff

—"offered to the defendants to return the property which they had sold to her and demanded the payment of her money.

"*The Court:* And the surrender of the contract, was that included?

"*Mr. Pokorny:* Yes, your Honor, the surrender of the contract."

It does not appear that the amendment was actually made. The jury returned a verdict against all of the

defendants for $900 and interest—in all, $973.37, and judgment was entered on the verdict.

Much of the testimony given by plaintiff is disputed and contradicted by testimony for defendants. Their motions for a new trial were denied. There are 13 specific assignments of error. Those argued are based upon the denial of a directed verdict, refusals to charge as requested, and the charge as given, the denial of the motion for a new trial.

The court was requested by the attorneys for Hannan and Gainey to charge the jury:

"34. I charge you that even though you find that this plaintiff is entitled to recover damages in this case, you cannot render a verdict against Mr. Gainey—Mr. Hannan—The Hannan Real Estate Agency, or the Hannan Rental Agency, unless you find that Mr. Gainey personally had knowledge of the false and fraudulent representations and that he made them knowingly and with the intention to deceive and defraud this plaintiff.

"35. I charge you that if you find that Mr. Gainey did make these statements and representations to plaintiff, and that they were false and fraudulent, and that Mr. Gainey was only repeating what Mr. Devlin had told him, Mr. Gainey not knowing they were false and fraudulent, then your verdict must be against Mr. Devlin alone, and not against Mr. Gainey, Mr. Hannan, The Hannan Real Estate Exchange, or the Hannan Rental Agency."

Neither these nor the equivalents of them were given. The jury was told, among other things:

"Gentlemen, you are instructed that the Hannan Real Estate Exchange is composed of W. W. Hannan alone, and that W. W. Hannan and the Real Estate Exchange are identical; and you are instructed that Mr. Gainey was the agent of W. W. Hannan for the purpose of selling this rooming house; that they were the agents of Mr. Devlin, and in this connection you are instructed that any material representations made by Mr. Gainey in the course of his employment binds himself as well as Mr. Hannan, and it binds Mr. Han-

nan as well as himself; but if these representations were not made in the course of his employment it would not bind Mr. Hannan, but would bind himself. * * *

"With reference to the relationship of Mr. Gainey and Mr. Hannan and Mr. Devlin. Mr. Devlin was the principal owner of this property, he placed this property with Mr. Hannan, Mr. Hannan was his agent. Mr. Gainey was in the employ of Mr. Hannan and was Mr. Hannan's agent and indirectly Mr. Devlin's agent in disposing of this property. Plaintiff claims that Mr. Gainey made certain representations about which I have instructed you. If Mr. Gainey made those false representations under the instructions I have given you and it was within the scope of his employment then that would bind his principal, Mr. Hannan, and also the principal Mr. Devlin. In this connection I charge you if Mr. Gainey received information from Mr. Devlin regarding this rooming house and believed it and repeated it to this plaintiff after explaining that he had no personal knowledge of the facts, he isn't guilty of fraud. Therefore, if you find that Mr. Gainey received such information from Mr. Devlin and repeated that information to this plaintiff and explained to her the source of his opinion, he isn't guilty of fraud if he acted honestly and in good faith, and under those circumstances your verdict would be no cause of action as against Mr. Gainey and Mr. Hannan."

Error is assigned upon the refusal to charge as requested and upon the charge. Separate requests to charge were presented on behalf of defendant Devlin. Without setting them out, various of the contentions of appellant, argued in the brief and orally at the hearing, are answered in the opinion.

OSTRANDER, C. J. (*after stating the facts*). What was purchased by plaintiff and sold to her was not merely furniture and furnishings for a rooming house, but was the furniture and furnishings of a rooming house doing business—the furniture and furnishings in use by tenants in a rooming house. It is true the

contract, reduced to writing, does not mention good will, or business, as consideration for what plaintiff was to pay. It does describe the property as per inventory and as "contained in the rooming house located at No. 485 Grand River avenue, second and third floors, Detroit, Michigan."

We cannot say, therefore, that if representations such as are alleged to have been made were made, and were false, they were not material. I doubt, however, if it can be fairly said there is testimony tending to sustain the allegation that the representation that the neighborhood was respectable was false. It is doubtful, too, whether defendant Gainey is shown by the testimony to have represented, as a fact, the income of the rooming house business. The testimony indicates, rather, that for the information concerning the rates for which rooms were rented, as well as for that concerning the cost of operation, Gainey, to the knowledge, and in the presence, of plaintiff, relied upon—that both relied upon—the representations of Devlin. That would be the usual thing to do. I think there is no evidence of the confederation of Gainey and Devlin to deceive plaintiff.

I do not find testimony tending to prove that Mr. Gainey made any representations concerning the character of the inmates of the house, or that he expressed the opinion that any roomer would remain in the house for any period of time. There is no testimony tending to prove that he knew the reputation or the character of any roomer. His silence, therefore, upon that subject would be no evidence of fraudulent design.

In the motion for a new trial, one reason assigned is that the verdict was against the weight of evidence. But in the brief no point is made that there ought to be a reversal here because the verdict is against the weight of evidence.

Plainly, the plaintiff's case is one for damages for injury suffered on account of the alleged fraud and deceit practiced by the defendants. As affecting the *cause* of action, it is immaterial whether plaintiff did or did not affirm or disaffirm the contract, whatever may have been the effect, as evidence, of the alleged disaffirmance. It is to be noticed, too, that when the alleged disaffirmance was made, or attempted, plaintiff had not learned either that the neighborhood or the roomers were not respectable, and did not make either of these facts a reason for believing herself defrauded. The evidence is convincing that she did not disaffirm at any time, but the course taken at the trial upon this subject and the submission to the jury of the question whether there was a rescission was not, I think, reversible error since, taken with the instruction concerning the measure of damages, it was harmless. The defendants requested the court to charge upon the subject of damages (protesting, of course, that no verdict for plaintiff ought to be returned), and the court instructed, that the recovery must be limited to the sum of nine hundred dollars, with interest and costs, concluding the request with the statement, "There is no testimony of any other damages incurred."

The position taken by counsel for the defendants other than Devlin, the position indicated in requests to charge and in various motions, was that they could not be held liable unless the statements made by Gainey were known to be false and were made with intent to deceive and defraud. Upon this point the trial court did not entirely agree with them as the requests to charge refused and the charge given show. The requests preferred, or the substance and effect of them, should have been given. *Aldrich* v. *Scribner*, 154 Mich. 23.

As to defendant Devlin, there is testimony tending

to prove some of the alleged representations and their falsity. No reason appears for reversing the judgment as to him. As to the other defendants it is reversed and a new trial granted. As defendants joined in the appeal and in presenting the case here, no costs will be awarded.

BIRD, MOORE, STEERE, FELLOWS, STONE. and KUHN, JJ., concurred. BROOKE, J., did not sit.