BURTCH *v.* CHILD, HULSWIT & CO.

1. WARRANTY — BREACH — REPRESENTATIONS — OPINIONS — STATEMENTS OF FACT—INTENTION—QUESTION FOR JURY.

In an action by the purchaser of bonds against the seller, a brokerage corporation, for breach of warranty, where plaintiff notified defendant that he was ignorant of the value of the bonds and that he relied upon its representations, and demanded a statement in writing from defendant direct that the bonds were good, in response to which defendant's secretary wrote that "We *know* that the bonds are *absolutely good*," *held*, to be open to the inference that more than a mere expression of opinion was intended and the question as to whether an expression

of opinion or statement of fact was intended was properly submitted to the jury.

2. SAME—AGENT'S AUTHORITY—EVIDENCE—SUFFICIENCY.

Testimony as to the secretary's authority to make the warranty, *held*, sufficient to submit to the jury.

3. SAME—AGENT'S AUTHORITY—NOTICE—RATIFICATION.

Where plaintiff refused to buy without a statement in writing from defendant that the bonds were good, and the next day he received such statement signed by defendant by its secretary, and thereupon defendant received plaintiff's money and retained it after being advised of the circumstances under which it was received, defendant, as a matter of law, ratified the act of its secretary, if he acted without authority.

4. SAME—BREACH OF WARRANTY—MEASURE OF DAMAGES—INSTRUCTIONS.

Where there was some testimony that the bonds were worthless at the time they were sold in 1909, an instruction by the court that if the jury found that they were worthless, the measure of damages would be the amount plaintiff paid for them, with interest to the date of the trial, was not erroneous, where they were also instructed that if they found there was some intrinsic value in the bonds in 1909 they should ascertain that value, and the difference between that sum and what plaintiff paid for them, plus the interest, would be the proper measure of damages.

5. SAME—CONFLICTING TESTIMONY—QUESTION FOR JURY.

Where certain letters written by plaintiff, introduced in evidence, were in conflict with his testimony on the trial that he relied on the representations of defendant, it was the province of the jury to determine which, if either, of these statements was true.

6. TRIAL—EVIDENCE—AFTER EVENTS—HARMLESS ERROR.

The admission of evidence of after events, although irrelevant, *held*, not prejudicial.

Error to Kent; Perkins, J. Submitted June 12, 1918. (Docket No. 6.) Decided October 6, 1919.

Assumpsit by Manley W. Burtch against Child, Hulswit & Company for breach of warranty on the sale of

corporate stock. Judgment for plaintiff. Defendant brings error. Affirmed.

*Butterfield & Keeney* (*Charles B. Blair,* of counsel), for appellant.

*Charles E. Ward,* for appellee.

BIRD, C. J. In 1909 plaintiff was engaged in the manufacturing business at Sparta. The defendant was a corporation engaged in the business of bond brokers at Grand Rapids. It is the claim of plaintiff that in August, September, and October, 1909, he purchased from defendant $13,500 in bonds of the Denver-Greeley Valley Irrigation District of Colorado on a warranty that they were a secure investment and absolutely good. They proved to be otherwise, and this suit in assumpsit was begun to recover the purchase price. The question whether defendant warranted the bonds was submitted to the jury, and they found that defendant did warrant them, and awarded plaintiff a judgment of $17,550, which covered the purchase price and interest. Application for a new trial and for judgment *non obstante veredicto* followed, but both applications were denied.

1. Defendant strenuously contends that there was no testimony on the question of warranty which justified the trial court in sending it to the jury. This point makes it necessary to review to some extent the testimony on that question. It appears from the testimony of plaintiff that he was solicited by defendant to purchase the bonds by descriptive literature outlining the irrigation projects, and by its personal representative, Mr. Stanton, who called upon him several times. Mr. Stanton praised the bonds, said they were good, said the company had been out there to investigate and that they were in a position to know their value. That plaintiff finally advised Stanton that he

would not purchase them unless he got a letter from the company direct, stating that the bonds were good. Mr. Stanton went away and soon thereafter plaintiff received from defendant the following letter:

"MR. MANLEY W. BURTCH,

"Sparta, Michigan:

"The writer, on returning to the city this morning, finds that our Mr. Stanton called on you last week and that you were interested in the Denver-Greeley Valley Municipal Irrigation District bonds, which we have been offering.

"If you are in funds at this writing we will be very glad to have you take some of this issue. * * *

"The writer has personally been over this district, Mr. Burtch, and it has also been visited by other members of our firm. * * * We *know* that the bonds are *absolutely good* and we recommend them as a very secure investment, paying an attractive rate of interest.

"CHILD, HULSWIT & CO.,

"RALPH S. CHILD, Secretary."

After receiving this letter plaintiff saw Mr. Child, who informed him—

"that the bonds were absolutely good, and the security back of them was adequate, that is, it was sufficient, that it was in the nature of a municipal bond, the same as a school bond, and that it was the highest kind of security that could not be destroyed. He said the lands were settled. He said that he, as well as other members of the firm, had been over the proposition, made investigations that it would not be possible for me to make, and that the bonds were good and that I need have no fear of losing my money. He said they were perfectly competent to investigate those things and that I was not competent to do so. Why, he said that they had made an investigation, and I told him I was relying absolutely on their word in making the investigation, because I did not claim to know enough to make an investigation myself; and, as a matter of fact, I told him I had no time to investigate it, and when I handed the money over to him I says, 'I am relying on you people absolutely in this matter.'"

Plaintiff further testified that he relied upon these representations, and would not have purchased the bonds except for them. This is, in substance, the basis of plaintiff's claim of warranty.

Defendant argues that the statements, oral and written, show, upon their face, that they are mere expressions of opinion and are not such as constitute in law a warranty, citing in support of this contention the following cases: *Bristol* v. *Braidwood*, 28 Mich. 191; *French* v. *Fitch*, 67 Mich. 492; *Krause* v. *Cook*, 144 Mich. 365; *Deming* v. *Darling*, 148 Mass. 504 (20 N. E. 107); *Crosby* v. *Emmerson*, 142 Fed. 713; *Worth* v. *McConnell*, 42 Mich. 473; *Chafey* v. *Mathews*, 104 Mich. 103 (27 L. R. A. 558); *Getchell* v. *Dusenbury*, 145 Mich. 197; *Duffany* v. *Ferguson*, 66 N. Y. 482.

And it is further contended that there is no evidence which shows that the statements were intended to be warranties. None of the cases cited is directly in point. They, like most of the cases, deal with the general rules and their application to the particular facts therein involved. It is not always easy to determine where expressions of opinion leave off and representations of fact begin. Sometimes the same statement made on different occasions but under different circumstances will be differently construed. As was said in *Andrews* v. *Jackson*, 168 Mass. 266 (47 N. E. 412, 37 L. R. A. 402):

"It is often impossible, * * * to determine as matter of law whether the statement is a representation of a fact which the defendant intended should be understood as true of his own knowledge or an expression of opinion. That will depend upon the nature of the representation, the meaning of the language used as applied to the subject-matter, and as interpreted by the surrounding circumstances in each case. The question is generally to be submitted to the jury."

207—Mich.—14.

Counsel suggest that the cases of *Bristol* v. *Braidwood* and *French* v. *Fitch, supra,* are similar on the facts and are controlling. We cannot agree with them in this view. The facts and the points decided are more or less at variance with the present one. In so far as particular cases can aid we think the cases of *Taylor* v. *Soper,* 53 Mich. 96, and *Knauss* v. *Major,* 111 Mich. 239, are more nearly in accord with the facts of the present case.

However, it may be said generally that:

"One who purchases a bond honestly relying on the seller's representations that it is valid when it is in fact invalid or worthless, may recover the price paid for it, in an action for a breach of warranty, although the seller may have acted in good faith and the buyer may have had ample opportunity to examine the bond. All material representations made by the seller with respect to the nature and character of the security for the bonds or as to the existence of security, when relied on by the purchaser, constitute warranties." 30 Am. & Eng. Enc. Law (2d Ed.), p. 158.

We might be able to agree with counsel in their contentions were it not for the letter of August 4th and the circumstances under which it was written. Plaintiff had been solicited by letter and literature to purchase the bonds. This was followed by several visits from Stanton who tried to induce plaintiff to purchase them. He had explained the irrigation projects upon which the bonds were issued, had praised their value and endeavored to convince plaintiff that he knew whereof he spoke, as members of his firm had been out to Denver and personally inspected the proposition. All this did not appear to satisfy plaintiff, he wanted something more, he wanted a letter from defendant itself that the bonds were as represented. In order to consummate the sale defendant yielded to his demand and wrote the letter, in which the significant words "know" and "absolutely good" were underscored.

Considering these circumstances, together with the fact that the irrigation projects at that time were new to the public, that plaintiff knew nothing about them and so advised defendant, and further advised defendant, when he purchased them, that by reason of his lack of knowledge he relied upon the representations so made to him, it cannot be said, as a matter of law, that the representations were mere expressions of opinion. We are persuaded that they are open to the inference that something more than mere expressions of opinion was intended. The question whether they were intended as expressions of opinion. or statements of fact was properly submitted to the jury. 35 Cyc. p. 481.

2. But counsel say there was no competent proof that Child, who wrote the letter of August 4th, had authority to warrant the value of the bonds. The trial court held, as a matter of law, that defendant had the power to warrant the value of bonds which it disposed of, but left it to the jury to say whether Child was authorized by defendant to do so. It appeared from the testimony that he was a director, secretary and vice-president of the company, in charge of the buying and selling of bonds. Testimony was received showing similar dealings with other persons. We think there was sufficient testimony to submit to the jury on the question of his authority to make the warranty, but if this question be a doubtful one, we think it can be said, as a matter of law, that the company ratified the act of Child. Plaintiff said to Stanton, "I will not buy unless the company writes me a letter saying the bonds are good." The next day he received such a letter signed by the defendant. This shows conclusively that the ultimatum of plaintiff was delivered to defendant and upon this letter defendant got plaintiff's money, and retained it after being advised of the circumstances under which it was received.

3. On the question of damages the court instructed the jury, in substance, that if they found the bonds were worthless in 1909, the measure of damages would be the amount plaintiff paid for the bonds, with interest to the date of the trial. They were further instructed that if they found there was some intrinsic value in the bonds in 1909 they should ascertain what the real value was, and the difference between that sum and what plaintiff paid for them, plus the interest, would be the proper measure of damages. Defendant claims that this was error because there was no evidence that the bonds were worthless in 1909. There was considerable testimony bearing on the value of the bonds in 1909, and there was some to the effect that they were worthless at that time. In view of this there was no error in submitting the case upon that theory. The instruction on the measure of damages finds support in *Maxted* v. *Fowler*, 94 Mich. 106.

4. Counsel argue that plaintiff, in purchasing the bonds, did not rely on the representations of defendant. This contention is supported by certain letters of plaintiff addressed to Trowbridge & Niver, in which he stated he relied on them in purchasing the bonds. This was in conflict with his testimony on the trial that he relied on the representations of defendant. After the admission of the letters plaintiff explained why he wrote them. It was the province of the jury to determine which, if either, of these statements was true. *Kelly* v. *Freedman*, 56 Mich. 321; *Watson* v. *Watson*, 58 Mich. 507; *People* v. *Hansen*, 183 Mich. 565; *Parnell* v. *Pungs*, 190 Mich. 638.

5. Serious complaint is made because the trial court admitted evidence of after events, namely: What steps were taken by the bondholders to protect their interests. Reports issued by the receiver and the bondholders' committees were received. Some of this testimony was important as throwing light on the value

of the bonds in 1909, but much of it had no relevancy to the issue. While we think there was much testimony admitted on matters foreign to the issue, we are not persuaded that such irrelevant testimony was prejudicial to defendant. We have examined and considered the remaining questions, but find no merit in them.

The judgment of the trial court is affirmed.

MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.

The late Justice OSTRANDER took no part in this decision.