PATRONS' MUTUAL FIRE INSURANCE CO. OF MICHIGAN *v.* PAGENKOFF.

1. INSURANCE—FIRE INSURANCE—FRAUD—CANCELLATION OF POLICY.
   Fraud in the application for a policy in a mutual fire insurance association, which was made part of the contract of insurance, in concealing the existence of a mortgage indebtedness on the insured premises, *held,* sufficient to justify the court of equity in canceling same and setting aside an award thereunder, where plaintiff acted promptly on the discovery of the fraud.

2. SAME—MORAL HAZARD—BREACH OF CONDITION—PRESUMPTION OF INJURY.

    It cannot be presumed that the breach of a condition, which increases the moral hazard, does the insurer no injury.

3. FRAUD—INTENT—ACTIONABLE FRAUD.

    It is immaterial whether a false representation is made innocently or fraudulently if by its means the party to whom it is made is injured.

Appeal from Ingham; Wiest (Howard), J. Submitted October 7, 1920. (Docket No. 41.) Decided March 30, 1921.

Bill by the Patrons' Mutual Fire Insurance Company of Michigan, Limited, against William Pagenkoff to cancel a policy of insurance, and to set aside an award by an adjusting board on said policy. From a decree for plaintiff, defendant appeals. Affirmed.

*Kinnane, Black & Leibrand,* for plaintiff.

*Michael J. Doyle,* for defendant.

STONE, J. The bill of complaint in this case was filed to cancel a policy of fire insurance and to set aside an award by an adjusting board, on the ground of misrepresentations by defendant in the written application for insurance, and in the sworn proofs of loss. Plaintiff is a domestic farmers' insurance corporation, organized under Act No. 262, Pub. Acts 1895 (2 Comp. Laws 1915, § 9586 *et seq.*). Defendant is a resident of Menominee county. On May 22, 1915, he made written application for increase of insurance in plaintiff company. In such application he warranted his representations therein set forth to be the truth, the language of the application being:

"The undersigned states and warrants, for the purpose of obtaining such insurance, the representations and statements herein to be the truth; and agrees that this application, together with the policy of said company, its articles of association and by-laws, are a part of the contract of insurance with said company."

To the question:

"If there is a mortgage or any other claim against the property by other than applicant, give name of claimant, nature of claim and amount of mortgage or claim?"

The answer was:

"$300 Hartner & Son, balance due on land."

On the strength of such representations plaintiff issued policy No. 23,500 on May 26, 1915. On May 15, 1915, defendant had mortgaged the insured real property for $275 in addition to the $300 Hartner mortgage. On May 26, 1915, the very day the policy was issued, the real estate mortgage tax to the county treasurer was paid, presumably by the defendant who had agreed to pay the same by the terms of the mortgage. On August 12, 1915, the insured property burned. On August 23, 1915, defendant made and delivered to plaintiff sworn proofs of loss in which he set forth that "there was at time of loss no mortgage, lien or execution, or any other claim or interest in or against any of the property lost, except  *  *  * David Goldberg of Marinette, Wis., chattel mortgage on horse $275, Geo. Hartner & Son, Faithorn, Mich., real estate mortgage $300."

Articles XI and XII of plaintiff's articles of association are as follows:

"Article XI. The policy of any member shall be void if the assured has concealed or misrepresented in writing or otherwise any material fact or circumstance concerning his insurance or the subject-matter thereof; or if the interest of the insured in the property is not truly stated; or if the property insured shall be sold, transferred or incumbered, after such policy is issued, unless the consent of the president and secretary of said company be indorsed in writing on said policy and signed by both of them.

"Article XII. The written application for insurance shall be a part of the policy and a copy thereof shall

be attached to the policy and the statements therein shall be representations and warranties of the facts therein stated; also a copy of charter and by-laws of said company shall be printed upon each policy issued and shall be a part thereof."

An adjusting committee consisting of Ralph N. Seward, Charles G. Swanson and Pat Hayes was appointed to, and did, make an adjustment, and allowed the defendant $315.25.

In his application for insurance defendant also failed to disclose a chattel mortgage on a horse which was insured and consumed in the fire. Plaintiff appealed to the board of arbitration provided for in the charter, which, in its award, deducted $150, being the amount allowed by the adjusters for the chattel mortgage on the horse, leaving the liability of the company $165.25. Defendant refused to accept that amount and sued on the award made by the adjusting board. That case reached this court on a question of practice (see *Pagenkoff* v. *Insurance Co.*, 197 Mich. 166). Subsequently plaintiff's officers discovered for the first time that defendant had misrepresented his mortgage indebtedness in both his application for insurance and also in his sworn proof of loss, following which discovery this bill of complaint was promptly filed.

In his application for insurance plaintiff represented the value of the farm, including buildings, at $1,200. Mr. Ralph N. Seward, a witness for the defendant, estimated the value of the real estate to be $500. Upon the hearing the secretary of the plaintiff company, whose duty it is to pass upon the acceptability of risks and to issue policies, testified that if he had been apprised of the $275 real estate mortgage in addition to the $300 mortgage he would not have issued the policy. The witness Seward, and also Charles G. Swanson, a witness on behalf of plaintiff, and members of the adjusting committee, both testified that if

they had known of the $275 real estate mortgage in addition to the $300 mortgage at the time of their adjustment "it certainly would have influenced the adjustment," and would have had an effect upon the result. The witnesses testified that they got the information and facts from the sworn proofs of loss.

After the hearing upon the pleadings and proofs and the arguments, the learned circuit judge who heard the case below, filed an opinion ordering the cancellation of the policy and the vacating of the award of the adjusting committee. Subsequently the matter was re-argued upon briefs, and a supplemental opinion was filed by the judge, adhering to his former opinion. After stating the amount of insurance and the representations in the application, the circuit judge, in his opinion, said:

"Meeting with a loss by fire, the defendant was given an award under the policy by adjusters, and plaintiff claims to have taken an appeal to arbitrators as provided under the articles of association and by-laws of the company, but the validity of such appeal is questioned by defendant. Whether an appeal was properly taken or not is of no importance, as defendant has sued at law on the award made by the adjusters, and plaintiff's claim for relief is based upon defendant's misrepresentation in obtaining the policy and no discovery of the fraud until after the action by the adjusters and the arbitrators. The failure of defendant to state in his application the true mortgage indebtedness kept from plaintiff information it was entitled to have, and his warranty of the truth of what he did state, bars him from claiming that plaintiff should not have relied upon his statement. The plaintiff had a right to be informed of the total mortgage indebtedness and to rely upon the statement warranted true by defendant in his application and to rest upon the same until discovery of the truth. Such representation was material and being untrue invalidates the policy unless waived by plaintiff. *Niles* v. *Insurance Co.*, 119 Mich. 252.

213—Mich.—11.

"Plaintiff is bound by the action of the adjusters and arbitrators unless the misrepresentation made by defendant was not discovered until after such action. The proof shows that plaintiff did not discover the misrepresentation until after the awards of both the adjusters and the arbitrators. Plaintiff was not bound to be suspicious of defendant's representation and therefore to make investigation of the public records, but was bound to act quickly when aware of the misrepresentation and that it has done in the only forum open to it. By suing on the award of the adjusters, defendant has cut plaintiff off from making the defense at law. The policy is void because of defendant's misrepresentation in his application, and plaintiff not being aware of the misrepresentation in time to present the issue to the adjusters or arbitrators, has a right to maintain this suit.

"The policy is canceled and the award of the adjusters vacated and a decree may be prepared to such effect."

### Supplemental Opinion.

"Consideration of the supplemental brief leads to no change of opinion. The fraud charged in the bill was that of defendant in procuring the insurance. If that fraud was discovered, or should have been discovered by the company, in time to present the same to the forum stipulated between the parties, then, of course, it was for that forum and not for this court. Under the bill and the evidence this is not a proceeding to review the award, nor is plaintiff trying now to avail itself of a defense it should have presented to the adjusters or arbitrators. Defendant having procured his insurance by misrepresentation upon a material matter, the company is at liberty, upon discovery of the fraud too late to have relief elsewhere, to ask this court to stay defendant's hands and defendant is in no position to urge that his fraud has been washed clean by an award made before discovery thereof.

"One led into a contingent liability contract through fraud, has a remedy, if liability is asserted, sometime, somewhere. Such remedy is by way of relief from the contract itself, and must be claimed at the first opportunity after discovery, but if not discovered until

the doors of the law side of remedy are closed, the door of equity jurisdiction is open and relief can be obtained, provided it appears that the defrauded party has been guilty of no laches and the fraud is of such a nature as to invalidate the contract.  It appears that the plaintiff moved promptly and in the only forum open to it after discovery of the fraud and is not to be charged with fault in not making discovery at an earlier date.

"A decree will be entered in accordance with the opinion heretofore filed herein."

The defendant has appealed.

In his brief in this court counsel for defendant quotes the following in article V of the articles of association of the plaintiff, which are as follows:

"(c) The duties of said adjusting board shall be to investigate the standing of the losing member in his subordinate grange; his compliance with the policy contract; the justice of his claims; the validity of his policy; the cause of the loss and the liability of the company, and to fix the amounts and valuations of property lost, and shall make a full report of their proceedings and findings to the secretary of the company.

"(d) If required, the loser shall submit to a full examination under oath by the adjusting board, or, in case of an appeal by the board of arbitration, of all matters pertaining to said loss, his application for insurance, his policy, his membership in the grange, his standing as regards dues, etc.  And if there be any fraud or evasion on his part with fraudulent intent, the claimant shall forfeit all claims for such loss under his policy."

And the following in article VI of the articles of association:

"Article VI.  *  *  *  In case the company desires to appeal from the findings of the adjusting board to the board of arbitration, the secretary shall notify such board and loser in the same manner as is provided in case where the loser appeals.  And no appeal to such board of arbitration shall be taken by either the loser or the company after the expiration of thirty

days from the date of the findings; but in such case the findings of the adjusting board shall be final and conclusive as to both the loser and the company.

"When an appeal is taken to the board of arbitration, said board shall investigate, try, hear and decide upon the justice of the claim, the validity of the policy, the liability of the company, and fix the amounts and valuation of the property lost or destroyed, and no suit at law or in equity shall be commenced or maintained by any loser or the company to determine the justice of the claim, the validity of the policy, the liability of the company or to fix the amounts of valuations, but the board of arbitration shall have exclusive jurisdiction to determine all controversy between the loser and the company, and such determination shall be binding and conclusive upon any such loser and the company."

We quote from the brief of defendant as follows:

"The question (and there is but one question—a concrete issue at that) is a simple one. Nor is there any contradiction in the evidence as to the facts. The learned circuit judge has overlooked, or deems unimportant, that which, according to my understanding of the law, is the all-important question in this case, viz.: the well defined differentiation between what is frequently, though inaccurately, termed legal fraud (conduct or silence in many instances entirely free from moral reproach) and actual fraud, a species of misconduct that predicates a wicked heart. Indeed, I am warranted in contending that the decree of the lower court proceeds entirely upon the assumption that no such differentiation is a part of our law."

Counsel then proceeds to quote from 2 Words & Phrases (2d series), pp. 638-642 et seq., and other authorities in support of his position, claiming that the case is not controlled, as the circuit judge held, by *Niles* v. *Insurance Co.*, 119 Mich. 252. He then refers to 20 Cyc. p. 36, quoting these words:

"There can be no actual fraud without a dishonest intent indicating moral turpitude."

Turning to that authority we find the entire sen-

tence from which counsel quotes a part to be as follows:

"It is sometimes stated that proof of 'actual fraud' is essential to maintain the action, or there can be no actionable fraud without a dishonest intent indicative of moral turpitude."

In a note under the text we find the following:

"But in Michigan the rule prevailing in courts of equity, that innocent misrepresentations may constitute fraud (see Contracts, 9 Cyc. 408), has been applied in actions of deceit, it being well settled that 'if there was in fact a misrepresentation, though made innocently, and its deceptive influence was effective, the consequences to the plaintiff being as serious as though it had proceeded from a vicious purpose, he would have a right of action for the damages caused thereby.' *Holcomb* v. *Noble*, 69 Mich. 396, 399 (followed in *Busch* v. *Wilcox*, 82 Mich. 315) ; *Baughman* v. *Gould*, 45 Mich. 481.   See, also, *Totten* v. *Burhans*, 91 Mich. 495."

In the *Totten Case* the headnote is as follows:

"It is immaterial whether a false representation is made innocently or fraudulently, if, by its means, the party to whom it is made is injured."

In *Holcomb* v. *Noble, supra,* Mr. Justice MORSE, in a concurring opinion, said on page 399:

"But an equally careful examination of the cases adjudicated in this State satisfies me that the doctrine is settled here, by a long line of cases, that if there was in fact a misrepresentation, though made innocently, and its deceptive influence was effective, the consequences to the plaintiff being as serious as though it had proceeded from a vicious purpose, he would have a right of action for the damages caused thereby either at law or in equity."   See cases cited.

We think the above reference to our authorities sufficient answer to the claim of defendant's counsel above quoted.

Under the Michigan authorities the evidence in the case shows that the misrepresentations of the defendant as to the mortgage conditions resulted in a fraud upon the plaintiff. It cannot be presumed that a breach of a condition, which increases the moral hazard, does the insurer no injury. Quite the contrary. The plaintiff issued a policy in the amount applied for. Had the information of the other mortgage been given in the application, the evidence substantially is that the plaintiff would have declined to issue a policy on account of the excessive mortgage indebtedness. The record shows incumbrances exceeding the value of the real estate under the testimony in the case. By what we have said we do not wish to be understood as conceding that the record does not show actual fraudulent intent on the part of the defendant. It is inconceivable that he was in ignorance of the real estate and chattel mortgage to Goldberg when he made his application for insurance. We think the case of *Wilms* v. *Insurance Co.,* 194 Mich. 656, cited by defendant's counsel, inapplicable here. A careful reading of that case will show that no fraud or mistake was charged against Wilms. We have examined *Metropolitan Life Ins. Co.* v. *Peeler* (Okla.), 176 Pac. 939, cited by defendant, but think it is not in line with our own decisions.

In addition to the authority cited by the circuit judge, we call attention to *Shelden* v. *Insurance Co.,* 124 Mich. 303, 310. We quote as follows:

"The court instructed the jury that if the valuation in the policy was an honest one, and not grossly overestimated, it would not avoid the policy, but that if Tuckey overestimated the property knowingly, for the purpose of procuring a larger insurance than he was entitled to, he should not recover. The valuation was made a warranty, and, under the authorities, a substantial overvaluation would avoid it, irrespective of motive, as shown by the following cases cited by

counsel: *American Ins. Co.* v. *Gilbert*, 27 Mich. 429; *Van Buren* v. *Insurance Co.*, 28 Mich. 398; *Ætna Ins. Co.* v. *Resh*, 40 Mich. 241; *Briggs* v. *Insurance Co:*, 65 Mich. 55, 56. See, also, *Niles* v. *Insurance Co.*, 119 Mich. 252."

It follows from what we have said that the decree below should be affirmed. If defendant elects, a provision may be embraced in the decree for the return to him of all premiums, fees, dues and assessments paid on account of the insurance under said policy. These amounts are tendered by the bill of complaint.

The decree below is affirmed, with costs to plaintiff in this court.

STEERE, C. J., and MOORE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.

The late Justice BROOKE took no part in this decision.