PATTEN *v*. DOWNER.

1. FRAUD—EXCHANGE OF PROPERTY—BROKER NOT LIABLE IN AB-
   SENCE OF PROOF OF CONSPIRACY OR THAT HE PROFITED BY TRANS-
   ACTION.

   In an action against the owner and a broker for damages
   for fraud in an exchange of real property, the trial court
   was in error in allowing the jury to find defendant broker
   liable, in the absence of any testimony of a conspiracy
   between defendants to defraud, or that he profited in any
   way by the transaction or received any of the considera-
   tion.

2. SAME—DAMAGES—MEASURE OF DAMAGES—VALUE OF PERMANENT
   IMPROVEMENTS RECOVERABLE.

   For permanent improvements placed upon the land by
   plaintiff while it was in his possession, and which he has
   tendered back, in so far as it enhanced the value of the
   premises, he is entitled to recover, less the rental value
   thereof, but for labor in attempting to cultivate the land,
   which in no way enhanced its value, and which was not
   necessary to keep it in its then condition, he is not en-
   titled to recover.

   McDONALD, BIRD, and MOORE, JJ., dissenting.

Error to Ingham; Collingwood (Charles B.), J.
Submitted January 23, 1924. (Docket No. 116.)
Decided May 8, 1924.

Case by Gaylord G. Patten against Stephen W.
Downer and another for fraud in an exchange of real
estate. Judgment for plaintiff. Defendants bring
error. Reversed.

*Hayden & Ballard* (*William C. Brown*, of counsel),
for appellants.

*Frank L. Dodge* and *L. B. Gardner*, for appellee.

On measure of damages for fraud in the exchange of property,
see note in 38 L. R. A. (N. S.) 465.

BIRD, J. (*dissenting*).   Plaintiff was the owner of an equity in a house and lot in the city of Lansing and traded it to defendant Downer in September, 1921, as part payment for 60 acres of muck land, 3½ miles northeast of Lansing, situated on the edge of what is commonly known as "the Chandler marsh."   The price fixed for the 60 acres was $4,323.   It was agreed that plaintiff's equity in the Lansing house and lot was worth $1,823.   This latter sum was indorsed on the contract for the farm, leaving a balance due thereon of $2,500.   In the winter or early spring of 1922 plaintiff moved onto the farm, and erected a small house and a few outbuildings, and attempted to farm the land, but was unable to make much headway, and moved off in midsummer.   He rescinded the contract and tendered defendant Downer the land contract and a notice in writing that he had rescinded, and demanded a return of his city property.   This was refused, and plaintiff began this action at law to recover his damages.   It was plaintiff's claim that he made the trade upon the representations of defendants that the farm was a valuable one and worth $100 per acre; that it was properly drained, free from frost, tillable at all seasons of the year, was well calculated for the raising of sugar beets, and could be cultivated in the early spring.   He claims he believed these representations and relied upon them in making the trade.   After living on the place about four or five months he learned that these representations were false.   The land was wet, sour, not properly drained, and was unfit for raising vegetables or sugar beets, and was not worth $100 an acre, nor was it worth what he paid for it. The respective contentions of the parties were submitted to a jury and they found with the plaintiff and awarded him damages in the sum of $2,100.

Defendants assign five errors on the charge of the court.

Assignment 1. Complaint is made because the jury were instructed that:

"It is immaterial whether a false representation is made innocently or fraudulently, if by its means the party to whom it is made is injured."

This is, undoubtedly, the law, and is supported by ample authority. *Holcomb* v. *Noble,* 69 Mich. 396; *Totten* v. *Burhans,* 91 Mich. 495; *Patrons' Mut. Fire Ins. Co.* v. *Pagenkoff,* 213 Mich. 157.

In the first case cited it was said:

"But an equally careful examination of the cases adjudicated in this State satisfies me that the doctrine is settled here, by a long line of cases, that if there was in fact a misrepresentation, though made innocently, and its defective influence was effective, the consequences to the plaintiff being as serious as though it had proceeded from a vicious purpose, he would have a right of action for the damages caused thereby, either at law or in equity;" citing authorities.

It is further complained in this assignment because the court instructed the jury as follows:

"But if you are satisfied by a preponderance of the evidence that the defendants falsely represented to the plaintiff any one or more of the material facts claimed by the plaintiff, and if the plaintiff believed the same to be true and relied thereon, and because thereof purchased the farm, then your verdict should be for the plaintiff."

The point is made on this part of the charge that defendant Ives should not have been included with Downer in the fraud. It appeared that Mr. Ives first directed plaintiff's attention to the land in question. He visited the land with plaintiff and defendant Downer. He made representations as to its value and as to the character of the soil and what could be raised thereon, and confirmed representations made by Mr. Downer. It did not appear that Mr. Ives was

227—Mich.—7.

acting in the capacity of a broker. Neither did it appear that he received any compensation, but it did appear that he was assisting Downer in making a sale of the premises. This would make him liable if he misrepresented the facts. We think the proofs were such that it was not error to submit the question of Ives' liability to the jury. *Weber* v. *Weber*, 47 Mich. 569. In this case it was said:

"Neither is it true that an agent is exempt from liability for fraud knowingly committed on behalf of his principal. A person cannot avoid responsibility merely because he gets no personal advantage from his fraud. All persons who are active in defrauding others are liable for what they do, whether they act in one capacity or another. No one can lawfully pursue a knowingly fraudulent employment; and while it may be true that the principal is often liable for the fraud of his agent though himself honest, his own fraud will not exonerate his fraudulent agent. *Starkweather* v. *Benjamin*, 32 Mich. 305; *Josselyn* v. *McAllister*, 22 Mich. 300."

A final point made in this assignment is that it was error to instruct the jury:

"That if defendants falsely represented any one or more of the material facts claimed by the plaintiff, * * * then their verdict should be for the plaintiff."

This objection is conclusively answered by *Haener* v. *McKenzie*, 188 Mich. 27.

Assignment 2. The court instructed the jury that:

"Now, in this case, Mr. Patten has tendered back to Mr. Downer his contract and has rescinded so far as he could his contract, and because he has done so, if you find for the plaintiff as I have charged, then you would come to the question of the measure of damages."

It is claimed that this is wrong because the rescission was not complete in that plaintiff's wife did not join in the rescission. The wife, under the holdings

in this State, would have a homestead interest in the farm during the time that she lived on it, but, when they moved off from the farm and abandoned it, she had no homestead interest to release.

Assignment 3. Counsel argue that the court left it to the jury to determine the question whether plaintiff had been injured as he claimed, and ignored the proposition that unless there were false and fraudulent representations made, that they were relied upon, and that the plaintiff was financially injured thereby, he could not recover, and that the instruction does not limit the jury to the consideration of false representations that were material.    The trial court used this language:

"But if you are satisfied by a preponderance of the evidence that the defendants falsely represented to the plaintiff any one or more of the *material* facts claimed by the plaintiff, and if the plaintiff believed the same to be true, and relied thereon, and because thereof purchased the farm, then your verdict should be for the plaintiff."

The court not only charged the jury in this wise, but it recited the particular false representations which the plaintiff claimed were made by the defendants. We think there is no basis for this assignment.

Assignment 4. In this assignment it is complained that the court left it to the jury to determine the value of the house and lot in Lansing, when there was no testimony as to its value.    The proof showed that plaintiff and Downer agreed on the value of the house and lot when the trade was made.    In addition to this there was proof as to what plaintiff paid for the premises, and proof that a real estate man had listed it for $4,000.    It was also shown what the incumbrances were.    We think there was sufficient proof in the record to enable the jury to determine the value of the house and lot, and also the interest which plaintiff had in it.

Assignment 5. Upon the question of damages the court said to the jury:

"Now, as I say, if you find for the plaintiff, he will be entitled to that amount of money with five per cent. interest from August 20, 1922.    In addition to that, if you find for the plaintiff, he will be entitled to the value of the improvements he has placed on that farm. You heard what was said about the buildings, how much they cost, and how much they were worth, and it is for you to determine the value of those buildings, with interest at five per cent.    In addition to that he will be entitled to the value of the services that he put in, the number of days that he was working there, and lost his labor, that is, lost his labor, if you find the defendants were guilty."

The point made by counsel upon this instruction is that the court was in error because it permitted plaintiff to recover for improvements, and also for labor which went into the improvements.    The latter part of the instruction with reference to the labor we think had no reference to the labor which went into the improvements.    That reference fairly construed had reference to the labor which plaintiff put in on the farm, in plowing, or attempting to plow, and to putting in crops and vegetables.    We do not think the jury were misled as to the meaning of this instruction.    We may say generally in actions on exchange of property the rule of damages is the same as when a sale is made.    35 Cyc. p. 40; *Crapo* v. *Seybold*, 36 Mich. 444. An exchange of property, like any other transaction, is vitiated by fraud, and if either party has been induced by the fraud of the other to make the exchange he may rescind the whole transaction and maintain an action for the recovery of the property which he gave in exchange, or for its value.    17 Cyc. p. 841; *Bristol* v. *Braidwood*, 28 Mich. 191.    Where a rescission for fraud has been had repairs and improvements made by the innocent party are recoverable as damages.    *Davis* v. *Strobridge*, 44 Mich. 157; *Kalisch*

v. *Kalisch,* 9 Wis. 529; *Thompson* v. *Thompson,* 16 Wis.
94; *McIndoe* v. *Morman,* 26 Wis. 588 (7 Am. Rep. 96);
*Patrick* v. *Roach,* 21 Tex. 251; 2 Sutherland on
Damages (4th Ed.), § 589.

The trial court in the present case instructed the
jury that if they reached the question of damages
plaintiff would be entitled to recover the value of the
equity in the house and lot which he exchanged for the
farm.    This was proper as defendant Downer dis-
posed of the equity and could not return it to plaintiff.
The jury was further instructed that plaintiff was
entitled to recover the value of the improvements made
upon the farm.    This was permissible under the
authorities cited.    The jury was also instructed that
plaintiff was entitled to recover for lost services, which
we construe to mean services in plowing and putting
in the crops.    It is extremely doubtful whether plain-
tiff was entitled to recover this item of damage.    It
is, however, unnecessary for us to determine this ques-
tion, as there is no assignment of error under which
it can be considered.    Defendants did not assign error
on the general scheme of damages submitted by the
court, but contented themselves with making two
specific objections, which we think are not well taken.

The trial appears to have been a fair one and re-
sulted in a very equitable judgment, and we think it
should be affirmed.

McDONALD and MOORE, JJ., concurred with BIRD, J.

FELLOWS, J.    I am unable to agree with the con-
clusions reached by my Brother BIRD in this case.    As
to defendant Ives, the most that is claimed by plaintiff
is that he was a broker assisting in making the sale.
I do not think the proof sustains this claim; but if
we assume, in the absence of a request for a directed
verdict as to him, that such was his interest, the in-
struction complained of was erroneous as to him.

There was no testimony that would justify the jury in finding a conspiracy between him and defendant Downer to defraud plaintiff, no testimony that he profited in any way by the transaction or that he received any of the consideration. In *Williamson* v. *Hannan,* 200 Mich. 653, recovery was sought against Devlin, the owner, Hannan, the real estate broker, and Gainey, his agent, for fraud in the sale of a rooming house. The instructions were similar to the ones be-. fore us. It was there said:

"The position taken by counsel for the defendants other than Devlin, the position indicated in requests to charge and in various motions, was that they could not be held liable unless the statements made by Gainey were known to be false and were made with intent to deceive and defraud. Upon this point the trial court did not entirely agree with them as the requests to charge refused and the charge given show. The requests preferred, or the substance and effect of them, should have been given."

In the recent case of *Steele* v. *Banninga,* 225 Mich. 547, the liability of an agent for false representations was again before the court and it was there said by Chief Justice WIEST, speaking for the court:

"Defendant was not plaintiffs' grantor; he was their agent in negotiating the purchase. As such agent defendant obligated himself to act without fraud or deceit. If defendant was only mistaken in what he said about the title and Stamp's rights and did not make the representations for the purpose of deceiving and defrauding plaintiffs then he is not liable to respond in damages for fraud and deceit. As plaintiffs' agent and not being a party to the sale by Mrs. Swanson and the purchase by plaintiffs, defendant could not be held liable for fraud and deceit unless the representations were made by him with intent to deceive and defraud plaintiffs. *Williamson* v. *Hannan,* 200 Mich. 658. The facts and the relation of the parties bring this case within the rule requiring knowledge of falsity and intent to deceive and defraud."

See, also, *Aldrich* v. *Scribner*, 154 Mich. 23 (18 L. R. A. [N. S.] 379) ; *Jackson* v. *West*, 224 Mich. 578. I think the instructions were erroneous as applied to defendant Ives and the case for this reason should be reversed as to him.

I am persuaded that the portion of the charge covered by assignment of error No. 5 is subject to the objection made to it and that it does not correctly state the measure of damages in an action based on rescission. Plaintiff tendered the premises back to defendant Downer and he now has them with certain permanent improvements placed thereon by plaintiff. In so far as the value of the premises is enhanced by these permanent improvements defendant Downer should respond, if plaintiff is entitled to recover at all, less the rental value of the premises during plaintiff's occupancy. But we are cited to no authority which authorizes a recovery for plaintiff's labor in attempting to cultivate the farm, which in no way enhanced the value of the premises returned to defendant Downer and which was not necessary to keep the farm in its then condition. While not cited, *Johnson* v. *Campbell,* 199 Mich. 186, should be considered and distinguished. Plaintiff there had purchased a theatre known as the "Unique." It was a going concern. Upon rescission he was allowed to recover the expenses incurred in keeping it a going concern until he should have learned that he had been defrauded. But the case is distinguishable in two particulars: (1) no question was raised as to the correctness of the instruction, and (2) it was necessary that plaintiff tender back to defendant what he had received of him, *i. e.,* a going concern. In the instant case no such situation appears. Under the instructions now being considered the jury was permitted to allow plaintiff the value of the improvements and also the value of his labor, some of which was devoted to

the erection of the buildings, and this without deduction for the rental value.

I think the judgment should be reversed with a new trial and with costs to defendants.

CLARK, C. J., and SHARPE, STEERE, and WIEST, JJ., concurred with FELLOWS, J.