*117 M...*

*f...*

## ALDRICH *v.* SCRIBNER.

1. FRAUD—MISREPRESENTATIONS—SCIENTER—NECESSITY.

In this State, in order to constitute fraud, it is not necessary that the person making the statement should either know that it is untrue or be recklessly and consciously ignorant whether it be true or untrue, but it is sufficient if the representation be false in fact, and the person making it is a party to the contract and profits by the other's loss. MONTGOMERY, BLAIR, and OSTRANDER, JJ., dissenting.

2. SAME—LIABILITY—EXTENT OF PROFIT.

The liability of a vendor, who deceives a purchaser by erroneous statements of fact made in good faith, to make good to such purchaser the loss accruing to him by reason of the property being worth less than it would have been worth had the statements been true, is not affected by the consideration that the purchaser may have paid less than the property would have been worth, and that therefore the purchaser may have lost more than the vendor gained by the transaction. MONTGOMERY, BLAIR, and OSTRANDER, JJ., dissenting.

Error to Wayne; Donovan, J. Submitted April 17, 1908. (Docket No. 128.) Decided September 10, 1908.

Case by Frank Aldrich and Sarah E. Aldrich against

Enoch W. Scribner for fraud and deceit. There was
judgment for defendant on a verdict directed by the court,
and plaintiffs bring error. Reversed.

*Palmer & Palmer*, for appellants.

*Clark, Jones & Bryant*, for appellee.

CARPENTER, J. For a statement of this case see 146
Mich. 609. The case has been retried, and a verdict
directed in defendant's favor. The false representations
relied upon as a basis of recovery were made to plaintiff
by Barnard & McCloud, real estate brokers. I think
there is evidence in the case that Barnard & McCloud
were acting as defendant's agents at the time these repre-
sentations were made. Moreover, plaintiff Frank Aldrich
testified that the defendant, "Scribner, asserted that those
representations Barnard had made to me were true."
The testimony also shows that defendant, Scribner, had
never seen the land in question, and that this circumstance
was known to plaintiffs, and there is also evidence that
the representations were relied upon by the plaintiffs, and
were untrue in fact. The question arises, assuming de-
fendant, Scribner, to have acted in good faith, Is he liable
on the ground of fraud ? I can discover no legal differ-
ence favorable to defendant between this case and that of
*Busch* v. *Wilcox*, 82 Mich. 315. There defendant, Wil-
cox, was held responsible in an action of fraud for mis-
representation respecting the timber upon a certain piece
of land. The misrepresentation was made by defendant's
agent, Hall, who had never seen the land, and the follow-
ing charge to the jury was approved :

" If you find that Mr. Hall, acting as agent for Wilcox,
knew that Busch did not know the quantity of the timber
upon the land in question, * * * and expected that
Mr. Busch would, in entering upon the agreement, rely
upon such information as he (Hall) might give him, and
you further find that Hall did, in good faith, make ma-
terial representations as to quality and quantity of timber
to be lumbered, and at the same time he made such rep-

resentations stated that he made them upon Mr. Van Riper's estimates, which he believed to be correct, and that Mr. Busch, relying upon such representations, did enter into the agreement of September 22d, and you further find that there was not upon the land the timber, either in quantity or quality, as represented, the plaintiff would be entitled to recover."

*Holcomb* v. *Noble*, 69 Mich. 396, is also in point. There defendant and plaintiff exchanged lands. In making this exchange plaintiff relied on certain representations of fact respecting the pine on the land transferred to him by defendant. These representations were based—and this was understood by plaintiff—upon the reports of a land looker, and defendant told plaintiff "that all he knew about the land was what he learned from the land looker." Defendant believed these representations to be true. They were in fact false, and plaintiff sustained damages by his reliance thereon. An action of fraud was brought, and it was held that plaintiff could recover. There were two opinions in the case, one written by Justice CAMPBELL and concurred in by Justice CHAMPLIN, one written by Justice MORSE and concurred in by Chief Justice SHERWOOD. In the opinion of Justice CAMPBELL it is said:

"It is admitted that in equity an actual design to mislead is not necessary if a party is actually misled by another in a bargain. There was abundant evidence in this case to authorize the jury to find that defendant, whether honestly or dishonestly, expected plaintiff to act on his representations of the reliableness of the reports which he produced, and that plaintiff did rely on them. There is no reason for a difference in action, in such cases, between courts of law and courts of equity. Where an equitable cause of grievance exists, it in no way differs from a legal one, unless a different remedy is needed. A court of law cannot cancel a contract, and for such a purpose the equitable remedy must be sought. But where the relief desired is compensation for the wrong, the equitable remedy is much less appropriate, and an action in equity for mere damages will generally be denied, but denied only because the legal remedy is better. If there

could be no legal remedy, there can be no doubt that equity would act. If the fraud is such that it creates a right of action anywhere, an action must lie on the case where a money judgment is needed."

I now quote from the opinion of Justice MORSE, concurred in by Chief Justice SHERWOOD:

"I was strongly impressed, upon the argument of this case, with the theory of the defendant, supported by abundant authority outside of our own State, that unless the jury found that the representations, relied upon by the plaintiff as false, were made by the defendant, Noble, knowing them to be false, or he made the statements as facts within his own knowledge, when he was ignorant of the truth or falsity of them, he could not be held liable in this action; that if he told plaintiff that he had never seen the lands, but that he had had the same examined by a competent land looker, who said that there were 5,000,000 feet of pine on the land, and made no representations as of his own knowledge, the plaintiff could not recover. A subsequent careful examination of the case, and the authorities cited by defendant's counsel, has but confirmed me in the correctness and justness of his claim. I am satisfied that the law ought not to make a different contract for the seller than he sees fit to make for himself, and hold him, in effect, for warranties that he never made. But an equally careful examination of the cases adjudicated in this State satisfies me that the doctrine is settled here, by a long line of cases, that if there was in fact a misrepresentation, though made innocently, and its deceptive influence was effective, the consequences to the plaintiff being as serious as though it had proceeded from a vicious purpose, he would have a right of action for the damages caused thereby either at law or in equity. *Baughman* v. *Gould*, 45 Mich. 483; *Converse* v. *Blumrich*, 14 Mich. 109; *Steinbach* v. *Hill*, 25 Mich. 78; *Webster* v. *Bailey*, 31 Mich. 36; *Starkweather* v. *Benjamin*, 32 Mich. 305; *Beebe* v. *Knapp*, 28 Mich. 53."

I think these decisions are indistinguishable from the case at bar, and require us to say that the trial court erred in directing a verdict for the defendant. The *Busch Case* and the *Holcomb Case* cannot be distinguished from the case under consideration by saying that in them

"the principal adopted the agent's estimate as his own," for in this case, as heretofore stated, defendant asserted to plaintiff "that those representations Barnard had made were true." It might therefore be said in this case, then, the principal adopted the agent's estimate as his own.

Our attention is called to *Krause* v. *Cook*, 144 Mich. 365. There defendant, acting for one Parker, sold mining stock to the plaintiff. Certain false representations were made, and an action to recover damages for fraud was brought. It was held that the trial court should have given the following instruction:

"If a person received information from others, and believes it, repeats it, explaining that he has no personal knowledge, he is not guilty of fraud. Therefore, if you find that the defendant received information from others, and repeated that information to plaintiff, and explained to plaintiff the sources of his information, he is not guilty of any fraud, if he acted honestly and in good faith."

At first blush it would seem that this principle is opposed to the decisions of *Holcomb* v. *Noble* and *Busch* v. *Wilcox*, supra. And it must be admitted, I think, that if this principle had been applied in those cases, a different conclusion would there have been reached. If there were no difference in the facts, it might be said that *Krause* v. *Cook*, supra, is opposed to the principle announced in the *Busch* and *Holcomb Cases*. But there is a difference in the cases, and, in my judgment, such a difference as to require a different rule of law. In the *Holcomb* and *Busch Cases* the defendant himself obtained what plaintiff lost by means of the false representations. In the *Krause Case* the defendant was an agent, who at most received only 10 per cent. of the damages caused by the false representations. This difference, in my judgment, places the *Krause Case* outside the rule of the *Holcomb* and *Busch Cases*. That rule is peculiarly a Michigan rule. Elsewhere, in order to create liability for deceit, it must be shown that—

"The person making the statement, or the person re-

sponsible for it, either knows it to be untrue, or is cul-
pably ignorant (that is, recklessly and consciously ignor-
ant) whether it be true or not." Webb's Pollock on Torts,
p. 355.

In Michigan we have held (see cases cited in the opin-
ion of Justice MORSE in the *Holcomb Case,* supra) that,
in order to constitute a fraud, it is not necessary that
the person making the statement should either know that
it is untrue or be recklessly and consciously ignorant
whether it be true or not. It is sufficient if it be false in
fact. It must be said, however, that in the cases in
which this principle has been applied, the defendant ob-
tained what the false representations caused the plaintiff
to lose. Applied in such cases, the principle is a just and
salutary one. This may be illustrated by the *Holcomb
Case*—which is a typical case. There, because plaintiff,
Holcomb, credited a certain false statement of fact, he
paid defendant, Noble, more for land purchased than other-
wise he would have paid. The false statement of fact
was an agency whereby the property of the plaintiff was
transferred to defendant. The law would be justly sub-
ject to reproach if it afforded no redress in such a case. In
Michigan the law does give redress in such a case, and that
redress may be obtained in an action for fraud. It may
seem somewhat unjust to characterize such conduct as
fraudulent, but the court was apparently placed in the
dilemma of either so characterizing it or of altogether deny-
ing compensation, and it chose the least objectionable of
these two alternatives. This principle, which is alto-
gether just in its application to cases where the loss of the
plaintiff has inured to the profit of the defendant, would
be most unjust if applied to cases where the defendant has
obtained no such profit. This may be illustrated by tak-
ing a concrete case, and I take a case even plainer in its
facts than the *Krause Case.* Let us suppose that, with
commendable motives and in the best of faith, one friend
communicates to another with all amplitude of detail cer-
tain information he has received respecting a mine, which

it is known that neither of them has ever visited. The object of this communication is to induce the one to whom it is made to purchase stock, but not from the one making the communication, but from a third person having no relation to him. The stock is purchased accordingly, without any profit resulting to the friend making the communication; the information proves to be false and the stock worthless. Did the friend who communicated the information which proved to be false commit a fraud? He did no moral wrong. Indeed, from a moral point of view, his conduct was commendable, and, unless compelled to do so, the court should not announce a rule of law which penalizes commendable conduct. Are we compelled to declare that there exists a rule of law which makes such conduct fraudulent? Manifestly not, unless we are bound to declare that the doctrine of the Holcomb and Busch Cases applies. Must we so declare? As already pointed out, the case differs materially from the Holcomb and Busch Cases, and this difference is such that the doctrine of those cases has no just application. That doctrine was designed to accomplish justice; as applied in the Holcomb and Busch Cases and in similar cases it does accomplish justice. As applied to cases where the loss of the plaintiff has not inured to the profit of the defendant, it accomplishes an injustice, and it therefore has no application to such cases. It is true that the Krause Case differs from the supposed illustrative case stated in this opinion in this: That the defendant Cook did profit to the extent of 10 per cent. of the loss sustained by plaintiff. If there were any rule of law by which we could hold a wrongdoer responsible for 10 per cent. of the damages, and relieve him of responsibility for 90 per cent. of the damages, it might have been just to have applied the principle of the Holcomb and Busch Cases to the Krause Case. But there is no such rule, and therefore we held, and were bound to hold, that the principle was inapplicable. The Krause Case was not, therefore, within the rule of the Holcomb and Busch Cases, and is not inconsistent with that rule.

It must then be said that the decision of the *Krause Case* casts no doubt on the *Holcomb* and *Busch Cases*. The rule applied in those cases is the law for all similar cases. The case at bar is similar, and is governed by that rule. Accordingly, it must be held that the trial court erred in refusing to submit the case to the jury.

Justice MONTGOMERY understands me to maintain that the principle of the *Holcomb* and *Busch Cases* can be applied only where " the consideration passing to the defendant was the equivalent to the damages which the law gives for such a wrong." If in my opinion there is any language which conveys that impression, I take this opportunity to say that in using it I failed to clearly express my views. Under these circumstances, it seems necessary for me to attempt to restate those views. Nearly every suit to recover damages for fraud arises from a contract. The plaintiff sues to recover damages because he has been fraudulently induced to make that contract. The defendant may be, and generally is, the other party to that contract. Sometimes, however, the defendant is a third person, either the agent of the other party, or perhaps some one having no legal relation whatever to either party. For the purpose of determining whether the principle of the *Holcomb* and *Busch Cases* is applicable, I draw a distinction between the suits brought against a party to the contract and the suits brought against those who are not parties to the contract. If it is brought against a party to the contract, that principle is applicable. If it is not brought against a party to the contract, that principle is not applicable. When one is fraudulently induced to enter into a contract, it is quite correct, in a general sense, to say that his loss inures to the profit of the other party to the contract. In a legal sense, the other party to the contract is the beneficiary of the fraud, and, speaking generally, his profits equal the losses of the defrauded party. I concede, however, that, under the well-settled rule that the measure of damages is the difference between the actual value of the property and its value as represented,

cases will arise where the losses of the defrauded party will exceed the profits of the other party to the contract. Such a case will arise whenever the defrauded party has paid less for property than it would be worth if the false representations had been true. I have no hesitation in saying that such cases are within the principle of the *Holcomb* and *Busch Cases.* The party to the contract is in such a case the legal beneficiary of the fraud. The defrauded party paid him what he himself regarded and accepted as the equivalent of the value of the property as it was represented to be. In such case, I think, it would be quite correct to say that the defendant, in consideration of what he did receive, understood that he should make good any loss caused plaintiff by relying upon the false representation. I think there is no injustice in holding him responsible for that loss.

Justice MONTGOMERY, as I understand his opinion, does not deny that in applying the principle of the *Holcomb* and *Busch Cases* a distinction may be drawn between those cases where suit is brought against a party to the contract and those where it is brought against an innocent person having no relation to the contract whatever. He does, however, deny that a distinction may be drawn between cases where suit is brought against the party to the contract and suit is brought against the agent. I content myself with saying that the agent is in no legal sense a party to the contract, and that the distinction between him and the innocent party is not of kind, but of degree. But, after all, the important question for this court to decide in this case is not whether I have pointed out a sound distinction between the *Krause Case* and the principle of the *Holcomb* and *Busch Cases.* The important question is this: Shall this court declare that the principle of the *Holcomb* and *Busch Cases* is no longer the law of this State? We cannot affirm the judgment in this case, as I have already pointed out, without so declaring. By so declaring we overrule the *Holcomb* and *Busch Cases.* We do more than that, we repudiate the principle of those

decisions. That principle is this: /That if a representation is false in fact, and actually deceives the one to whom it is made, it is actionable fraud, even though made in the best of faith, and even though the one who made it had every reason to believe it to be true. That principle is peculiar to our jurisprudence. It has existed for many years, as shown by the long line of cases cited in the opinion of Justice MORSE heretofore referred to. By rejecting that principle we overrule those cases. As I have heretofore pointed out, the principle applied in a certain class of cases affords redress for wrongs which otherwise could not be redressed. Whether that principle should or should not—and I have urged that it should—be limited to such cases, it certainly should continue to be applied to them. To affirm this judgment is to hold that it cannot be applied to them. To affirm it is to hold, that by a false representation, innocently made, one may profit by another's loss and entirely escape responsibility. I cannot consent to repudiate that principle. I vote, therefore, for the reversal of the judgment.

GRANT, C. J., and HOOKER, MOORE, and McALVAY, JJ., concurred with CARPENTER, J.

MONTGOMERY, J. (*dissenting*). Plaintiffs brought this action on the case against the defendant to recover damages claimed to have been sustained by reason of false and fraudulent representations made by the defendant to the plaintiffs relating to a farm in Lapeer county, which representations are alleged to have induced a trade by plaintiffs of an equity in a house and lot in Detroit for the farm. It is claimed that the particular representations were made by a firm of real estate agents, who, it is alleged, represented the defendant. This is a matter of dispute. The representations were made on an unsigned slip of paper, and described the property as follows:

"Forty acres; 6-room frame house; small barn with

wagon shed, also shed attached to barn; room enough for five horses; 175 fruit trees in good bearing condition; fences fair; rents at $100."

It is claimed that these representations were not true in fact, and that there were less than 100 fruit trees on the property, which, it would seem, was the principal ground of complaint made by the plaintiffs. The case has been once before the court. On the former trial a recovery was had by the plaintiffs, and the judgment was reversed upon error, in an instruction given by the trial judge. On the second trial, a verdict was directed for the defendant. It is claimed by the plaintiffs that the testimony on the present trial is not materially different from that given upon the first trial. It is enough to say, if such was the case, that the question of whether there was a case for the jury was not determined upon the former hearing, and is now for our consideration.

The plaintiffs were entitled to go to the jury upon the question of fact if the representations which were made by the defendant were made as statements of fact within the knowledge of the defendant. The plaintiff's testimony as to the representations made by Barnard & McCloud, the real estate agents, is as follows:

" Barnard told about this property, and finally he pulled out some papers from a pigeonhole in his desk, and made a memorandum from them as to how many trees there were and the condition of the barn; * * * that everything he had stated to me was true. It was the same statement that had been made to Mr. Scribner, that they had made inquiry from Ferguson, besides getting the statement from the gentleman he had bought from, and that the banker had stated it was true; that the property was all right."

There was other property also traded, called the " Avon property," and plaintiff testified that when defendant and himself were going out to see this Avon property, they discussed the trade, and he proceeds:

" I told him I really ought to see the Lapeer property

before I traded, but I figured that if the representations that Barnard had made—that it is 40 acres of land, that there is a six-room house, and if there is 175 bearing apple trees—that certainly the property should pay 6 per cent. on $1,600. Scribner replied that he figured it just that way when he made the trade."

He further testified that he knew they had just traded for the property. He knew that they had telephoned a Mr. Ferguson of Almont, who held a mortgage on the property. He also testified that he himself conferred with a Mr. Hanna, who had once owned the property, in the absence of defendant, with a view of getting all the information he could. He also testified that defendant, Scribner, had told him that the representation in the memorandum made by Barnard was faulty in one respect —that the farm was not rented for $100—but that Ferguson had told him it was rented for $60, and plaintiff testified that, after receiving the memorandum that Barnard gave him, he had a talk with Scribner, and found that he had never seen the farm, and that he had had these same representations from Ferguson. The testimony on behalf of the defendant shows that the information imparted to plaintiff was precisely that which had been given him by Ferguson, and there is nothing in the case to indicate that there was any intent to mislead the plaintiff.

The case presents the question of whether, in the absence of a warranty, one who sells property stating that he has no personal knowledge of its condition, but who gives the source of his information upon the subject, and imparts the information as it was imparted to him, is liable, in an action on the case for deceit, if the information turns out to be incorrect. Plaintiff relies chiefly upon *Holcomb* v. *Noble*, 69 Mich. 396, and *Busch* v. *Wilcox*, 82 Mich. 336. In each of these cases the representation consisted of an estimate of timber made by an agent of the seller, and it is possible that the rulings may be sustained upon the ground that the principal adopted the agent's estimate as his own. If so, the cases can be

distinguished from the case under consideration. However this may be, the latest enunciation of this court was made in *Krause* v. *Cook,* 144 Mich. 365. In that case the question was distinctly presented. Cook was charged with fraud in the selling of stock. He made certain representations as to the character of the property, and these representations proved to be false. It was held that the court should have given the following instruction:

"If a person received information from others, and believes it, repeats it, explaining that he has no personal knowledge, he is not guilty of fraud. Therefore, if you find that the defendant received information from others and repeated that information to plaintiff, and explained to plaintiff the sources of his information, he is not guilty of any fraud, if he acted honestly and in good faith."

I am not able to distinguish that case from the present. It is suggested that in the *Krause Case* the defendant was an agent who at most only received 10 per cent. of the damages caused by the false representations. This attempt to distinguish appears to be based upon the assumption that the recovery in an action for fraud is in some sense based upon what the defendant received. There is no such rule of law that I am acquainted with. The present case well illustrates the difficulty of applying such a rule. There is very little doubt upon the record in this case that the farm, even in the condition in which it proved to be, was adequate compensation for the equity in the Detroit property which the defendant received. But this, if there was actionable fraud, would not affect the plaintiff's right to recover the difference between the farm as represented and what it actually proved to be. True, if upon the ground of mutual mistake it was sought to rescind a contract because facts, which both parties assumed upon information derived from the same source to be true, proved to be false, a very different question would be presented. But in an action for fraud the recovery is not based upon what the defendant receives. It is based upon the fact that the plaintiff has been induced

to enter into a contract, and through false representations of the defendant has found himself in possession of something different from what he expected. The illustration of information afforded by one friend to another as to the value of mining or other property, accompanied by a statement of the source of information, is not an apt illustration of anything analogous to the facts in *Krause* v. *Cook*. In such case there is no contract between the parties. But in *Krause* v. *Cook* there was a contract. The defendant was a party to that contract in the sense that he not only made the sale of the stock as agent, but received a consideration passing to him; and, as pointed out in the opinion of Mr. Justice HOOKER, the rule in *Holcomb* v. *Noble*, so far as it is a sound rule, was in *Angell* v. *Loomis*, 97 Mich. 5, applied to an action against an agent.

It is suggested that the rule of liability for a representation such as that involved in this case accomplishes justice where the contract is made by the defendant, and the whole consideration passes to him. This is certainly a shadowy distinction, existing only in degree at best, and if an attempt were made to make such a distinction, it would involve in every case an investigation as to whether the consideration passing to the defendant was the equivalent of the damages which the law gives for such a wrong. This is neither an action to rescind nor is it an action to recover the consideration paid. It is an action for a tort, and that tort is committed as well by one who receives only a portion of the consideration as by one who receives it all. If such a distinction were attempted, one partner could not be made liable in an action of tort for a representation, which afterwards proved to be false, made under the circumstances of this case, whereas one who received the whole consideration might.

I find it impossible to distinguish the case of *Krause* v. *Cook*. See, also, *Hunt* v. *Blanton*, 89 Ind. 38, cited in defendant's brief; also 20 Cyc. p. 17.

It is also alleged that the court erred in excluding testi-

mony to contradict evidence given by the witness for the defendant on the former trial of the case, who had since died. A complete answer to this objection is that the defendant offered to waive the objections he had previously made to the testimony and permit plaintiff to put in the proof, but he declined to do so.

We think no error was committed in withdrawing the case from the jury, and judgment should be affirmed.

BLAIR, and OSTRANDER, JJ., concurred with MONT-GOMERY, J.