MULHERON *v.* HENRY S. KOPPIN CO.

1. FRAUD — VENDOR AND PURCHASER—RESCISSION OF CONTRACT—
CAVEAT EMPTOR.

 Where the vendor in a land contract for the sale of a
cottage under construction represented that it would be
a first-class job, vendees could rescind because of in-
sufficient foundation which caused serious damage to the
house, although they visited it three or four times after
purchasing; the defect being a latent one and the doctrine
of *caveat emptor* having no application.

2. SAME—GOOD FAITH NO DEFENSE WHERE FALSE REPRESENTA-
TIONS MATERIAL.

 That the vendor made the representations in good faith,
believing that the contractor whom it had engaged had
complied with his contract and the building code of the
city, would not relieve it of liability, where they were
untrue, were material, and were relied on by the vendees
to their damage.

3. CANCELLATION OF INSTRUMENTS—EQUITY—JURISDICTION.

 Equity will assume jurisdiction in a suit for the cancella-
tion of a contract on the ground of fraud where something
more than a money decree is sought, and will retain it
to work out the rights of the parties.

4. FRAUD—RESCISSION MUST BE PROMPT ON DISCOVERY.

 One seeking to rescind a contract on the ground of fraud
must act promptly on discovery of the fraud.

5. CANCELLATION OF INSTRUMENTS—RESCISSION—FRAUD—WAIVER—
LACHES.

 Where plaintiffs, in the latter part of January, dis-
covered that they had been defrauded in the purchase of a
cottage, ceased making payments in February, employed
counsel, and for several months negotiated with the
vendor for settlement, but, failing in this, gave up posses-
sion and filed a bill for cancellation and other relief, they
were not precluded from maintaining it by reason of
waiver or laches.

6. SAME—LIEN FOR PAYMENTS NOT AUTHORIZED ON CANCELLATION
FOR FRAUD.

Where a contract for the purchase of a cottage was re-
scinded by the vendees and canceled by a court of equity
on the ground of vendor's fraud, the court was not author-
ized to award the vendees a lien on the premises for the
payments made, since their right to a lien must be based
on the contract, and when that was rescinded the parties
were remitted to their original rights.

Appeal from Wayne; Des Voignes (L. Burget), J.,
presiding. Submitted October 26, 1922. (Docket No.
174.) Decided December 5, 1922.

Bill by Alexander Mulheron and another against
Henry S. Koppin Company for the cancellation of a
land contract, an accounting, and for a lien upon the
premises for the amount paid. From a decree for
plaintiffs, defendant appeals. Modified and affirmed.

*McIntyre & Robinson,* for plaintiffs.

*Lucking, Helfman, Lucking & Hanlon,* for defend-
ant.

FELLOWS, C. J. Defendant company is engaged in
the business of building houses which it sells on con-
tract. From this record it appears that it was an
owner of at least a portion of Tannenholz Realty Com-
pany's subdivision of Private Claim 543, located north
of Michigan avenue in the city of Detroit. Upon it
the company erected a large number of cottages. The
location had originally been a brickyard and the clay
had been taken out to the depth of several feet. After
its abandonment as a brickyard it became a dumping
ground and was filled with all sorts of discarded
articles. These were covered over with soil and
leveled off and left to stand for some three years when
defendant commenced its building operations.

Plaintiffs saw defendant's advertisement of the

cottages for sale and went to the premises with a view of buying one. They found a man in charge in a cottage which was then being used as an office. Other cottages were being erected on the plat. It is the claim of the plaintiffs that certain representations were then made to them as to the quality of the cottages for sale, among them being that they would be like the sample cottage, of good workmanship, that first-class material was being used in their construction, and that the cottages were all first-class jobs, and the agent showed them a plat and pointed out a lot they could buy, took them to it, where they found a partially constructed house. The following day plaintiffs went to defendant's downtown office and entered into a contract for the lot selected and paid $500 on the purchase price and $32.40 for insurance. This was in March, 1920. The house was soon thereafter completed and they moved in April 16th following. Their monthly payments were $50.

When the plaintiffs started to make their garden they learned that the lot was filled ground. This fact was confirmed when they installed a furnace as they told defendant's agent they intended to do when they were conducting the negotiations. That there should be no misapprehension, it may be now stated that plaintiffs' basis of relief is not that the land was filled land, but that the foundation under the house was of such shallow depth that, taken in connection with the porous condition of the filled land, the house settled, causing the walls to crack, the floors to become uneven, the house to get out of plumb and render the job anything but a first-class job. It is doubtless true that other defects in construction were discovered when the lawsuit was imminent which would have otherwise been overlooked.

We are convinced that plaintiffs' house settled and the insufficiency of the foundation came to their

knowledge in January, 1921. While Mr. Mulheron first thought it was in the spring of that year, on further reflection he testified that there was a warm spell in January when the frost came out of the ground. That it was at this time the difficulty became apparent is confirmed by the fact that about 50 other persons who had purchased cottages from defendant in this locality experienced like settling in their houses and like damage to their homes about this time. The purchasers got together and appointed a committee, and the building department of the city was consulted and an inspector sent out. He found that plaintiffs' foundations were only down about 18 inches whereas the building code of the city required that they should be down at least 3 feet, 6 inches. Other foundations were from 14 to 20 inches in depth. Defendant, by direction of the building department, undertook the work of putting in proper foundations to comply with the building code and did put in foundations which squared with its requirements. In addition to complaining to the building department the purchasers employed counsel who took up the matter with defendant's counsel and an adjustment was attempted. We are convinced from this record that counsel for both sides acted in the utmost good faith and made heroic efforts to settle the troubles. Doubtless had defendant followed the advice of its counsel this litigation would not be here. As a result of the negotiations between counsel defendant agreed to settle with 32 of the purchasers and the amounts agreed upon. Plaintiffs were not of this number, due to defendant's insistence that it would not pay for improvements, but the negotiations were continued with a view of coming to an agreement with those who had put on improvements and in some instances payment for small improvements was agreed to. Defendant paid but 10 of the purchasers and declined or was

unable to pay the balance.    Plaintiffs moved out of the premises and this and some 40 other suits were instituted.

Plaintiffs seek cancellation of the contract, relief from its forfeiture clause, accounting, and a lien on the premises for the amount found due them.    The trial judge found the facts to be with the plaintiffs. He had the advantage of seeing the witnesses and a view of the premises had at the request of both parties. We agree with his conclusions on the facts and shall not further discuss them in detail.

Mr. Mulheron had been a cabinet maker but not a house-builder.    He and his wife visited the house two or three times after they bought it.    We do not think the doctrine of *caveat emptor* applies.    The defect which damaged the house was a latent one.    The foundations were put in by a contractor employed by defendant.    Doubtless defendant's officers and agents believed the contractor had complied with his contract and the building code of the city.    But their representations to plaintiffs concerned a fact presumptively within their knowledge, of which they assumed to have knowledge; they were relied upon by plaintiffs to their damage, were untrue and were material. Under the repeated holdings of this court defendant can not escape liability for them on the ground of good faith in making them.    The new foundations were put in because the building department and the building code required them to be put in.    They were not put in to settle plaintiffs' claim.    The damage to the house had already been done and there is testimony in the case tending to show that even with the present foundations there will be further settling of the house due to the porous condition of the filled ground.    Plaintiffs as we shall see did not under the peculiar facts of the case waive their right to rescind because they continued to occupy the house after the

new foundations had been put in.    This leaves for consideration the three principal questions in the case:

(1) The jurisdiction of a court of equity.

(2) Has the right to rescind been waived or lost by laches?

(3) May the plaintiffs have a lien on the premises for the amount found due?

1. If not before, at least since the decision in *John Hancock Mut. Life Ins. Co.* v. *Dick,* 114 Mich. 337 (43 L. R. A. 566), this court has recognized the concurrent jurisdiction of the court of equity in actions involving fraud where something more than a money judgment is necessary to work out the rights of the parties.    It is possible that this court went further in that case than in those which preceded it.    In *Mactavish* v. *Kent Circuit Judge,* 122 Mich. 242, this court was asked but declined to overrule it.    Other efforts have unsuccessfully been made to have the court recede from the doctrine there announced.    In *Fred Macey Co.* v. *Macey,* 143 Mich. 138 (5 L. R. A. [N. S.] 1036), Mr. Justice GRANT and Mr. Justice HOOKER, both of whom wrote in the case, fully review the authorities and sustain the jurisdiction of a court of equity.    The opinions are so full in that case that we refrain from further citation of authorities on this question.    We have not, however, gone to the length of holding that courts of equity have concurrent jurisdiction in all cases where fraud is involved; and where a money decree only is sought jurisdiction in equity has been denied in numerous cases, illustrative of which are *Flint* v. *Le Heup,* 199 Mich. 41, and cases cited at page 49.    But where something beyond a money decree is sought and the interposition of a court of equity is necessary to work out the rights of the parties this court has not been grudgeful in entertaining equity jurisdiction.    In the instant case can-

cellation of a written instrument is sought and relief from a forfeiture asked.  Both furnish grounds for equitable relief, and the court of equity having assumed jurisdiction will retain it to work out the rights of the parties.   The plaintiffs have sought the proper forum.

2. We do not think the facts of the instant case would justify us in holding that by remaining in possession of the premises after discovery of the fraud plaintiffs waived their right to rescind or that they are guilty of laches.   It is a rule, well recognized, that one seeking to rescind must act promptly on discovery of the fraud and may not after such discovery continue to recognize the validity of the contract.  In the instant case plaintiffs did not, after the discovery of the fraud, continue for a long time to recognize the validity of the contract and make payments thereon as in *Draft* v. *Hesselsweet,* 194 Mich. 604.   The fraud was discovered the latter part of January and plaintiffs ceased making payments in February.   Plaintiffs and others employed counsel and for several months negotiations for settlement were pending.   Failing to get results by negotiations they delivered up possession and filed this bill.   Under the facts they are not precluded from maintaining it by reason of waiver or laches.   *Fred Macey Co.* v. *Macey, supra.*

3. This leaves for consideration the interesting question of whether the trial judge was authorized in awarding plaintiffs a lien on the premises for the amount found due.   Generally speaking, the right of a vendee to a lien on the premises purchased is recognized both in England (*Rose* v. *Watson,* 10 H. L. Cas. 672; *Whitbread & Co., Ltd.,* v. *Watt* [1902], 1 L. R. Ch. Div. 835), and in this country (*Stewart* v. *Wood,* 63 Mo. 252; *Bibb* v. *Prather,* 1 Bibb [Ky.], 313; *Bullitt* v. *Eastern Kentucky Land Co.,* 99 Ky. 324 [36 S. W. 16]; *Davis* v. *Heard,* 44 Miss. 50; *McWilliams* v. *Jenkins,* 72 Ala.

221—Mich.—13.

480; *Swetitsch* v. *Waskow,* 37 Ill. App. 155; *North* v. *Bunn,* 122 N. C. 766 [29 S. E. 776]; *Ihrke* v. *Insurance Co.,* 91 Wash. 342 [157 Pac. 866]; *Elterman* v. *Hyman,* 192 N. Y. 113 [84 N. E. 937, 127 Am. St. Rep. 862]; *Craft* v. *Latourette,* 62 N. J. Eq. 206 [49 Atl. 711]). And this court in the early case of *Payne* v. *Atterbury,* Har. 414, recognized the right of a vendee who had promptly made his payment to a vendee's lien on the premises. In Ruling Case Law the general rule is thus stated (27 R. C. L. p. 628):

"Lien of Purchaser Generally. As a general rule, a purchaser of land by executory contract is entitled to an equitable lien thereon for the amount paid on the purchase price, where the contract fails because of some act or conduct of the vendor or his inability to perform it. The exact nature of this lien is not clear. The doctrine has been quite generally applied without any discussion as to the nature of the lien, except, perhaps, the statement in general terms that it was an equitable lien, very similar to that of a vendor for unpaid purchase money. Its existence was upheld in England in 1864 in the case of *Rose* v. *Watson,* 10 H. L. Cas. 672, after an exhaustive investigation of the subject; and the same doctrine is announced in many jurisdictions in this country. Where the agreement to convey is in consideration of services to be rendered or the like, instead of a money consideration, a lien for their value has been upheld; and though the contract of sale was oral and for such reason unenforceable against the vendor, the purchaser has been held entitled to a lien on the refusal of the vendor to perform. It exists independently of whether the purchaser is in or has been let into possession, and is recognized in jurisdictions which refuse to recognize any implied lien on the part of the vendor, after a conveyance, for unpaid purchase money."

In the main the cases above cited do not differentiate between actions in affirmance of the contract and those where the contract has been rescinded and the action is in avoidance of it, nor do they in the main con-

sider whether a different rule should apply. Some of the cases, however, do consider that question, others by their reasoning make the doctrine applicable to both classes of cases. In New York the question has been given careful consideration. *Davis* v. *Rosenzweig Realty Co.*, 192 N. Y. 128 (84 N. E. 943, 127 Am. St. Rep. 890), was handed down with *Elterman* v. *Hyman, supra.* In the *Elterman Case* the court had recognized the general doctrine that the vendee under a land contract had a lien but the *Davis Case* was a case where the vendee had rescinded and a majority of the court held that under such circumstances he was not entitled to a lien, and it was there said:

"The first question presented is whether the lien of a vendee for the amount paid on an executory contract for the purchase of land survives a rescission of the contract adjudged by a court of equity on the ground of fraud practiced by the vendor by which the vendee was induced to enter into the contract? Under the facts found the right of recovery at law for the sum paid is not questioned, but it is strenuously insisted that rescission destroys the contract and remits the parties to their original rights.

"We held in the *Elterman Case* that the vendee's lien was created by the contract and payment thereunder, and that upon default by the vendor without fault of the vendee the latter could foreclose his lien. If we reasoned correctly in that case there can be no lien without a contract. Payment on the contract pursuant to its requirements gives a lien by operation of law. The contract is the essential basis of the lien, for payment is simply an observance by the vendee of one of the express terms thereof. Rescission, therefore, destroys the contract *ab initio* and leaves the parties in the same situation as if no contract had ever been made. Under these circumstances there can be no lien."

An examination of the record and briefs in *Von Hoene* v. *Barber*, 215 Mich. 538, discloses that the precise question here involved was there before this

court.    The bill was based on the rescission of a land contract for fraud.    It was claimed that the. court of equity had jurisdiction because plaintiff had an equitable lien.    The trial judge on the authority of *Davis* v. *Rosenzweig Realty Co., supra,* had held that when the contract was at an end by rescission a lien did not attach in favor of a vendee who had elected to rescind.    In affirming the case we adopted the New York rule.    We appreciate that the doctrine of the *Davis Case* has been seriously criticized but it was adopted in the *Von Hoene Case* and must be considered the law in this State and controlling of the instant case.

The discussion of this question should not be closed without a consideration of the case of *Culver* v. *Avery,* 161 Mich. 322, because upon its face it is not in accord with the *Davis* and *Von Hoene Cases.*    Before considering it, however, it is well that we quote from the section of Ruling Case Law (R. C. L. p. 629) following the one above quoted:

"Effect of Rescission; Priorities.    It has been held that the contract is an essential basis of the lien and if it is destroyed the lien is also lost; and that therefore if the purchaser elects to rescind the contract for the fraud of the vendor he thereby destroys his lien for payments made thereunder.    In other cases, however, the right of the purchaser to a lien has been upheld where the purchaser's right to recover payments made was based on a rescission for the fraud of the vendor, such cases being considered without argument as governed by the same principle as where the recovery is for the failure or refusal of the vendor to convey."

In the *Culver Case* the plaintiffs had rescinded the contract for fraud and sought cancellation of the agreement, relief from the forfeiture clauses, and an equitable lien for the amount found due.    As we have pointed out, a court of equity may be appealed to for the cancellation of the contract and relief from the

forfeiture clauses contained in it.   An examination of the briefs in the *Culver Case* discloses that complainant's solicitors there insisted that they were entitled to an equitable lien if entitled to the other relief, and this contention was in no way controverted by defendant's counsel.   The case must be regarded as falling within the class of cases last noted in Ruling Case Law.   The question here presented was in no way called to the attention of the court, and courts of last resort can hardly be expected *sua sponte* to discuss questions not raised and not necessary to decision. Now that the question is here and necessary to decision and a more extended consideration and discussion required, we are constrained to hold that this court has accepted the doctrine of the *Davis Case* and that plaintiffs having rescinded the contract may not have a lien for the payments made under it.

It follows from what we have said that the decree of the court below must be modified by eliminating the lien on the premises and affirmed in all other regards. Neither party will recover costs of this court.

WIEST, MCDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.   MOORE, J., did not sit.