## WILLIAMS *v.* BENSON.

### OPINION OF THE COURT.

1. FRAUD—MISREPRESENTATION—GOOD FAITH.

   Representations which are false in fact and actually deceive the other and are relied on by him to his damage are actionable, irrespective of whether the person making them acted in good faith in making them, where the loss of the party deceived inures to the benefit of the other.

2. SAME—ACTION—MISREPRESENTATIONS—GOOD FAITH.

   A representation which is false in fact, and actually deceives the one to whom it is made, is actionable fraud even though made in the best of faith and even though the one who made it had every reason to believe it to be true.

3. SAME—INNOCENT MISREPRESENTATION—EFFECT ON VICTIM.

   One who obtains the property of another, by means of untrue statements, though in ignorance of their falsity, must be held responsible as for a legal fraud, either at law or in chancery since the consequences to the victim are as serious as though it had proceeded from a vicious purpose.

4. SAME—DUTY TO DISCLOSE—SILENCE AS FRAUD.

   Party to a contract or transaction who has superior knowledge or knowledge which is not within the fair and reasonable reach

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 23 Am Jur, Fraud and Deceit §§ 115, 116, 120, 122, 123.
[4] 23 Am Jur, Fraud and Deceit §§ 77–80.
[5–10] 23 Am Jur, Fraud and Deceit §§ 76–82.
[11, 12] 23 Am Jur, Fraud and Deceit § 85.
[13] 23 Am Jur, Fraud and Deceit § 85; 41 Am Jur, Pleading §§ 340–342.
[14, 15] 23 Am Jur, Fraud and Deceit §§ 78, 85.
[16] 23 Am Jur, Fraud and Deceit §§ 78, 85; 41 Am Jur, Pleading §§ 340–342.

of the other party and which he could not discover by the exercise of reasonable diligence, or means of knowledge which are not open to both parties alike, is under a legal obligation to speak, and his silence constitutes fraud, especially when the other party relies upon him to communicate to him the true state of facts to enable him to judge of the expediency of the bargain.

5. SAME—SUPPRESSION OF FACTS.
Fraud may be consummated by suppression of facts and of the truth, as well as by open false assertions.

6. SAME—DISCLOSURE.
Whenever the facts are such that they impose a duty to disclose, suppression or failure to disclose amounts to fraud.

7. SAME—DISCLOSURE—SUPPRESSION OF MATERIAL FACT—FALSE REPRESENTATION.
The suppression of a material fact, which a party in good faith is duty-bound to disclose, is equivalent to a false representation and will support an action in fraud.

8. SAME—DISCLOSURE—FAIR DEALING—OBJECTIVES OF PARTIES.
Whether a duty to speak exists is determinable by reference to all the circumstances of the case and by comparing the facts not disclosed with the object and end in view by the contracting parties.

9. SAME—SILENCE—FAILURE TO CORRECT MISLEADING STATEMENT—FAIR DEALING.
Silence in the form of failure to correct a misleading statement or when fair dealing requires him to speak may be held to be a basis for liability in an action for fraud.

10. SAME—DISCLOSURE—SPECIFIC INQUIRY—RESCISSION.
Failure to disclose material facts even absent specific inquiry can amount to fraud and support rescission under the proper circumstances.

11. VENDOR AND PURCHASER—TERMITE INFESTATION—DUTY TO DISCLOSE.
Knowledge of prior termite infestation at time of sale of commercial property, believed to have been arrested, constitutes a special circumstance giving rise to a duty to disclose on the part of a vendor to his vendee.

12. SAME—KNOWLEDGE—INSTRUMENT OF PROGRESSIVE DESTRUCTION—DUTY TO DISCLOSE.
Vendor having knowledge of past or present existence of an instrumentality of progressive destruction or substantial im-

pairment, has a duty to disclose the circumstances notwithstanding he has reason to believe that the progression has been halted.

13. JUDGMENT—PARTIAL SUMMARY JUDGMENT—DAMAGES.

Partial summary judgment was properly granted on motion of defendant purchasers against defendant vendors, where facts are undisputed and the law is clear that latter owed a duty to disclose to the former the existence of prior termite infestation and failed to do so, with separate trial on issue of damages to follow.

DISSENTING OPINION.

T. G. KAVANAGH, J.

14. VENDOR AND PURCHASER—EXISTING CONDITION—THREAT TO ENJOYMENT—DUTY TO DISCLOSE.

*A duty to speak exists when there is knowledge by vendor of an existing condition posing a substantial threat to the enjoyment of property being sold.*

15. SAME—FAILURE TO DISCLOSE—ACTIONABLE FRAUD.

*Deliberate withholding by vendor of the fact of a prior warning might be sufficient evidence of an intent to prevent investigation to support a determination of actionable fraud.*

16. JUDGMENT—SUMMARY JUDGMENT—FAILURE OF EVIDENCE.

*Summary judgment in favor of defendant appellees should be set aside in action for fraud since there is no evidence in the record upon which to determine whether appellant deliberately withheld information of the prior warning, or whether the present termite infestation is a new one or whether it existed at the time of the sale.*

Appeal from Jackson; Dalton (John C.), J. Submitted Division 2 November 3, 1965, at Lansing. (Docket No. 602.) Decided April 26, 1966. Application for leave to appeal considered, summary judgment for plaintiffs set aside, decision of Court of Appeals set aside, case remanded for trial June 30, 1966. See 378 Mich 721.

Complaint by Leo R. Williams and Geraldine L. Williams against Frank A. Benson, Freda E. Benson, Charles Muller, and Alida Muller to foreclose a

land contract. Cross complaint by Frank A. Benson and Freda E. Benson against Charles Muller and Alida Muller to foreclose a land contract on the same property. Cross complaint by Charles Muller and Alida Muller against Frank A. Benson and Freda E. Benson to rescind land contract on the basis of fraud. Summary judgment for cross-plaintiffs Muller on the issue of liability. Cross-defendants Benson appeal. Affirmed.

*Kenneth B. Johnson,* for defendants Benson.

*Rosenberg, Painter, Stanton & Bullen (Lawrence L. Bullen,* of counsel), for defendants Muller.

FITZGERALD, J. This appeal requires a prolegomenon of sorts, dealing as it does with two somewhat mystical realms of the law. Couple these with a unique fact situation and the reader will soon see why prefatory stage-setting is necessary before an exhaustive dissertation is appropriate.

The two propositions referred to are these: first, whether fraud may consist of simply remaining silent when a duty to speak is found; and second, whether fraud under these circumstances can look to the results of the conduct rather than to the state of mind of the alleged wrongdoer.

Further narrowing the problem before us, we come to the question of whether Michigan's "silence-fraud" rule has become sufficiently amalgamated with Michigan's minority "innocent misrepresentation" rule to permit concurrent application to the facts in this case.

The facts themselves are no less intriguing:

In 1958, the plaintiffs (Williams) sold their motel on land contract to the appellants (Benson). The plaintiffs informed the appellants that the motel

had been infested by termites, but that plaintiffs had personally treated the affected areas with a chemical solution and believed that the problem had been arrested.

In 1962, the appellants sold the motel on a second land contract to the appellees (Muller). Appellants made no mention of their knowledge of the prior infestation or the steps taken by plaintiffs to eliminate the problem.

In 1964, appellees discovered that the motel was seriously infested with termites and notified appellants of their discovery and of their intention to discontinue payments under the second land contract. Succeeding months saw both appellees and appellants default under their respective land contracts, and suit for foreclosure was brought against both by plaintiffs.

Appellants subsequently filed a cross claim for foreclosure against appellees. Appellees filed a counterclaim against appellants for relief against foreclosure of their land contract interest and for damages in the sum of $50,000, alleging in part that appellants had been under a duty to disclose that the premises were then and had been infested with termites.

Appellants' answer to this counterclaim admitted knowledge that the motel had been treated for termites by the plaintiffs, but denied any knowledge that it was infested by termites at the time of the sale to the appellees. Appellants stated that to their knowledge and belief the problem had been arrested, and denied any fraud or withholding of facts in connection with the sale. Appellees then moved for summary judgment.

This motion was granted by the trial court which entered a partial summary judgment holding that appellants were liable for damages suffered by ap-

pellees in an amount to be determined in a subsequent trial limited to that issue only. In addition, a restraining order issued, preventing appellants from foreclosing the interests of appellees under the second land contract during the pendency of this action.

Appellants' motion for an order setting aside the partial summary judgment was denied, and this appeal was thereafter brought.

The questions before this Court will point up why our consideration must necessarily revolve around "silence-fraud" and "innocent misrepresentation":

"1. Did appellants, who purchased a motel with notice of prior termite infestation, upon assurances from their vendors that the damaged areas had been chemically treated and the problem arrested, and *believing such to be true during their ownership,* have a duty to speak and inform their subsequent vendees (appellees) that the motel had been previously infested with termites?

"2. Does knowledge of prior termite infestation, believed to have been arrested by chemical treatment, constitute a special circumstance giving rise to a duty to speak on the part of a vendor to his vendee?" (Emphasis supplied.)

It is obvious that the trial court answered both of these questions "Yes" as evidenced by the partial summary judgment granted. The magnitude of this holding, we feel, requires firm footing, and we proceed to ascertain how the law in Michigan reached its present state.

We examine first the basic consideration of whether malice or *scienter* is a necessary showing in a fraud case. We note that it was 100 years ago that Mr. Justice COOLEY, in *Converse* v. *Blumrich* (1866), 14 Mich 109, made the following statement which has charted the course for our court decisions during the last century (p 123):

"We have carefully in the course of our opinion abstained from speaking of the acts of complainant as intentionally dishonest, and from characterizing them with harshness. We have been obliged to say of his statements that they were untrue, and made on his part with knowledge that they were so. But we will not undertake to say that he did not convince himself by some process of reasoning that they were correct. The legal aspect of the case would not be different if we came to that conclusion, since the courts must look at the effect of untrue statements upon the person to whom they are made, rather than to the corrupt motive of the one making them. If one obtains the property of another, by means of untrue statements, though in ignorance of their falsity, he must be held responsible as for a legal fraud."

This concept is succinctly restated in 23 Am Jur, Fraud and Deceit, § 120, with heavy reliance on Michigan law for authority (p 908):

"In some jurisdictions the rule is broadly stated that intent to deceive is not a necessary element of an action at law for fraud to recover damages. This is a minority view. The minority rule is followed in one State in a slightly more specific formulation; and it is held that where an action is brought to recover for false and fraudulent misrepresentations made by one party to another in a transaction between them, any representations which are false in fact and actually deceive the other and are relied on by him to his damage are actionable, irrespective of whether the person making them acted in good faith in making them, where the loss of the party deceived inures to the benefit of the other. The minority rule as thus stated is applied in suits brought against a party to the contract. In all the various jurisdictions where the minority principle obtains, the intent or good faith of a representor is not in issue and is not controlling.

"One of the reasons for the minority rule is that there is no difference in principle between actions at law and in equity in respect of fraud, and it is admitted that in equity an actual design to mislead is not necessary if one party to a bargain is actually misled by the other. Another reason for the rule is that the consequences to the defrauded party are as serious as though the misrepresentation had proceeded from a vicious purpose, and that a party should be held to the reasonable consequences of his acts." (Citing *Aldrich* v. *Scribner, infra,* and other Michigan decisions for the previous propositions.)

It was in *Aldrich* v. *Scribner* (1908), 154 Mich 23, that another statement of this principle is found (p 32):

"That principle is this: that if a representation is false in fact, and actually deceives the one to whom it is made, it is actionable fraud even though made in the best of faith and even though the one who made it had every reason to believe it to be true. That principle is peculiar to our jurisprudence."

*Aldrich* in turn cites *Holcomb* v. *Noble* (1888), 69 Mich 396, and *Busch* v. *Wilcox* (1890), 82 Mich 315, as landmark examples of the application of the doctrine.

An ensuing decision, *Weinberg* v. *Ladd* (1917), 199 Mich 164, begins to approach even more closely the instant fact situation. Involved was a horse trade, with defendant representing and evidently believing his horses to be sound. Examination after the trade revealed that the horses in question had glanders, a communicable, incurable disease, "difficult to detect and capable of being established only by certain tests known to veterinary surgeons." Plaintiffs recovered and in affirming the Court said something we must mark down as important to the instant case, "Nor is it a defense that defendant

believed the representation to be true," and again *Aldrich, supra,* was relied upon.

In 1922, we find the Court in *Mulheron v. Henry S. Koppin Co.,* 221 Mich 187, reiterating the doctrine once again. Here the defendant company built a number of houses for sale on contract in a location which had originally been a brickyard and which was then abandoned and became a dumping ground for junk. The junk was covered with soil and leveled off and left to stand for three years before the building operation was started. Plaintiffs purchased one of the houses upon representation as to the quality of the building, but no reference was made to the fact that it was constructed on filled land. In affirming a suit for cancellation of the contract, the Court stated that even though plaintiffs had inspected the premises at various stages the doctrine of *caveat emptor* does not apply, nor does the good faith belief of the defendant mitigate, saying, "The defect which damaged the house was a latent one." Such is the situation in the instant case wherein a latent defect later ravages the premises. The court in *Mulheron* says (p 191):

"Doubtless defendant's officers and agents believed the contractor had complied with his contract and the building code of the city. But their representations to plaintiffs concerned a fact presumptively within their knowledge, of which they assumed to have knowledge; they were relied upon by plaintiffs to their damage, were untrue and were material. Under the repeated holdings of this court defendant cannot escape liability for them on the ground of good faith in making them."

Accord, *Irwin v. Carlton* (1963), 369 Mich 92.

In summing up the jurisprudence of this State relating to innocent misrepresentation, we find no better statement nor can we compose a superior one than that found in 12 MLP, Fraud, § 1 (p 391):

"The doctrine is settled in this State that if there was in fact a misrepresentation, though made innocently, and its deceptive influence was effective, the consequences to the plaintiff being as serious as though it had proceeded from a vicious purpose, he would have a right of action for damages caused thereby either at law or in chancery,"

citing *Sullivan* v. *Ulrich,* to be discussed later, and which in the logical progression emerges as the capstone of the "silence-fraud" area of the law, to which we now turn.

To rely once more on an encyclopedic statement as a springboard for our examination of Michigan law, we quote from 23 Am Jur, Fraud and Deceit, § 80, wherein it is stated (p 857):

"There is much authority to the effect that if one party to a contract or transaction has superior knowledge or knowledge which is not within the fair and reasonable reach of the other party and which he could not discover by the exercise of reasonable diligence, or means of knowledge which are not open to both parties alike, he is under a legal obligation to speak, and his silence constitutes fraud, especially when the other party relies upon him to communicate to him the true state of facts to enable him to judge of the expediency of the bargain."

It is here we reach the juncture in our examination of the instant fact situation that we ask the question, should the Bensons have told the Mullers that the premises were once infested with termites, but that to the best of their knowledge they had been exterminated?

An early examination of this concept was found in *Tompkins* v. *Hollister* (1886), 60 Mich 470, where a duty to disclose was premised on the existence of a quasi-fiduciary relationship. As there stated (p 483), "A fraud arising from the suppression of

the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud." Such are the rudimentary beginnings of today's views in this area.

Similarly, in *Fred Macey Co. v. Macey* (1906), 143 Mich 138, where a fraud was committed upon those purchasing stock by a secret and burdensome agreement between a group of promoters and stockholders, the Court here said (p 153), "Fraud may be consummated by suppression of facts and of the truth, as well as by open false assertions. Fraudulent concealment is a matter of equitable jurisdiction as well as fraudulent assertion. *The point, therefore, that no fraudulent representations were made by the defendant to the complainant or its stockholders is not well-taken."* (Emphasis supplied.)

The concept was further refined in 1934 when, in *Wolfe v. A. E. Kusterer & Co.,* 269 Mich 424, the Court suggests that whenever the facts are such that they impose a *duty to disclose,* suppression or failure to disclose amounts to fraud.

It was in 1948, in the case of *Groening v. Opsata,* 323 Mich 73, that the Court settled the proposition that the suppression of a material fact, which a party in good faith is duty-bound to disclose, is equivalent to a false representation and will support an action in fraud.

This case, dealing with the sale of a house located on a bluff, involved a vendor who, responding to a direct inquiry from a prospective vendee, assured him that the erosion of the bluff represented no problem, that the house was perfectly safe and that there was nothing to fear. It was in this case that the trial court in its charge to the jury, a charge

which is approved in the body of the opinion, stated (p 80):

" 'and, whether a duty to speak exists is determinable by reference to all the circumstances of the case and by comparing the facts not disclosed with the object and end in view by the contracting parties. The facts concealed must be such as in fair dealing the one party has a right to expect to be disclosed, and such as the other party is bound to disclose.' "

Here, as opposed to previous cases, there was not claimed a fiduciary relationship and we have another factor going to the element of silence in that defendants requested the trial court to charge the jury that Mr. Opsata could not be held liable because of misrepresentations made by his wife and conversely. "The request was refused, and properly so," said the Court (p 86). "Mr. and Mrs. Opsata owned the property together, and it appears that each participated in the efforts to bring about a sale to plaintiffs. Moreover, both were present when the principal conversation between the parties occurred. Each apparently acquiesced in the statements made by the other." Here, silence in the form of failure to correct a misleading statement was ruled to be a basis for liability. This correlative holding relating to silence was expanded in *Nowicki* v. *Podgorski* (1960), 359 Mich 18, where again a husband and wife, each remaining silent during alleged misrepresentations of the other, were held liable. The Court, citing *Sullivan, supra et infra,* states (p 32), "It is also true that *one who remains silent* when fair dealing requires him to speak may be guilty of fraudulent concealment." (Emphasis supplied.)

Two interesting corollaries of concealment or suppression of material facts arise in the divorce cases of *Walker* v. *Walker* (1951), 330 Mich 332, and

*Phelps* v. *Phelps* (1953), 335 Mich 687. In each case
the common-law wife of the defendant learned that
he had a living wife by previous marriage, this fact
not having been disclosed prior to marriage. In
each, the Court reiterates the principle that conceal-
ment of material facts may constitute actionable
fraud, citing *Groening* and *Wolfe, supra.* The cita-
tion of the *Wolfe Case* in this context raises the
inference that the Court may not limit its findings
relative to a duty of disclosure to stock transactions.

Of particular interest is the case of *Ball* v. *Sween-
ey* (1958), 354 Mich 616, wherein plaintiffs brought
an action to rescind and cancel a contract for the
purchase of resort property based on fraud. The
trial court found that the failure of defendants to
disclose that the Michigan health department had
been attempting to compel defendants to alter their
sewage system, their failure to disclose that they
were having difficulty with neighbors concerning the
sewage system, and their failure to disclose a pend-
ing lawsuit amounted to the withholding of material
facts and constituted fraud, entitling plaintiffs to
rescind their contract and recover the money paid
under it. Syllabus 2 contains this statement:

"Finding of trial court that defendant vendors
of resort property had fraudulently concealed sew-
age difficulties between themselves and neighbors
to the south and with the State department of health
justifying rescission of the contract to purchase and
return of plaintiff's money *held,* proper, under evi-
dence presented."

Thus, we arrive at the proposition that failure
to disclose material facts even absent specific inquiry
can amount to fraud and support rescission under
the proper circumstances.

An examination of the preceding cases brings us
to the juncture where we have two vast rivers of

authority; one composed of the "no *scienter*" or innocent misrepresentation rule, the other the "silence-fraud" rule, both flowing inexorably toward the instant case.

We pause at the headwaters of the newly-formed stream to examine what is undoubtedly the most definitive pronouncement on this subject. That is the case of *Sullivan* v. *Ulrich* (1949), 326 Mich 218, and interestingly enough the subject matter of that case concerns the wily *Reticulitermes Flanipes,* or termites, as does the instant case.

In *Sullivan,* plaintiff-vendee sued defendant-vendor for damages for concealment of the fact that the house involved was infested with termites. Plaintiffs allege that they made direct inquiry of defendant and her realtor regarding the presence of termites, and that the impression created by their response was that no termites were present. The house was later found to be infested with termites and plaintiffs claim misrepresentation to their damage. Plaintiffs appealed from a judgment for defendant, the case being tried without a jury.

The case was reversed and remanded for assessment of damages, the court finding that the evidence presented in the lower court clearly preponderated in favor of a finding that defendant knew of the termites and the damage they had done to the house, further, that the conduct of defendant and her realtor plainly showed that they intended to convey the impression to plaintiffs that there was no termite infestation or termite damage. For the proposition that such conduct amounts to fraud by misrepresentation, the court cites *Busch, Wolfe,* and *Groening* among others.

The doctrine, *suppressio veri, suggestio falsi,* suppression of the truth is the expression of what

is false, is clearly expounded in the body of the opinion (p 228):

" 'Fraud may be consummated by suppression of a material fact by either party to a contract of sale *which he is in good faith bound to disclose,* as well as by open false assertions since by such suppression there is fraudulently produced a false impression upon the mind of the other party,' " quoting the headnote from *Wolfe.* (Emphasis supplied.)

The court continues in what is probably the most telling pronouncement relating to the instant case (p 229):

"It may be conceded that the defendant testified truthfully as to her lack of recollection of having been informed of the presence of termites; likewise, it may be conceded that her agent testified truthfully in saying that there were no termites *within his knowledge,* that he did not see any. However, the result has been to convey to plaintiffs a negative answer to their inquiry about termites, and plainly such result was intended. The case is controlled by the above decisions. We find that the evidence of misrepresentation and fraud clearly preponderates in favor of the plaintiffs." (Emphasis in original.)

We come now to the inevitable application of Michigan's law to the instant facts and the concomitant question of whether knowledge of prior termite infestation, believed to have been arrested, constitutes a "special circumstance" giving rise to a duty to disclose on the part of a vendor to his vendee. We concede that the issue before us does not extend to deliberate concealment of material facts, nor to a misrepresentation of facts honestly believed, but is limited to the query of whether a duty to speak existed. Knowledge of the prior defect on the part of the vendor, of course, is es-

sential, for we do not intend to impose liability where no knowledge has ever existed. Nor do we intend to make everyone an insurer of everything that is sold.

Rather, we hold that where a vendor has knowledge of the past or present existence of an instrumentality of progressive destruction or substantial impairment, notwithstanding reason to believe that the progression has been halted, a duty to disclose the circumstances arises. In a case like that before us, the doctrines of Michigan law amalgamate to the point where a full disclosure of such basic defects as the termite infestation of *Sullivan,* the sewage disposal problem of *Ball,* the erosion of *Groening,* require full disclosure and *caveat emptor* has no place. Silence as to the existence or pre-existence of such known instrumentalities of progressive destruction or substantial impairment, even absent specific inquiry, can create liability. These constitute the "special circumstances" spoken of so often by our Supreme Court and where an inequality of knowledge exists, these special circumstances bring about a duty to speak.

There is likewise ample authority from other jurisdictions for imposition of liability when undisclosed serious latent defects resulting in substantial impairment are present: *Obde* v. *Schlemeyer* (1960), 56 Wash 2d 449 (353 P2d 672) (termites); *Jenkins* v. *McCormick* (1959), 184 Kan 842 (339 P2d 8) (defective cement); *Dargue* v. *Chaput* (1958), 166 Neb 69 (88 NW2d 148) (inadequate drainage); *Loghry* v. *Capel* (1965), 257 Iowa 285 (132 NW2d 417) (improperly compacted filled ground); *Greenberg* v. *Glickman* (1944), 50 NYS2d 489 (subsurface water condition); *Simmons* v. *Evans* (1947), 185 Tenn 282 (206 SW2d 295) (lack of water supply); *Kallgren* v. *Steele* (1955), 131 Cal App 2d 43 (279

P2d 1027) (building located in highway right-of-way); *Forest Preserve Dist. of Cook County* v. *Christopher* (1943), 321 Ill App 91 (52 NE2d 313) (pending condemnation of premises).

One last consideration comes before us and that is the propriety of the partial summary judgment issued in favor of the Mullers. An examination of the record indicates that all the proper factors are present. In the language of GCR 1963, 117.3, "Judgment shall be rendered forthwith if the pleadings show that any party is entitled to judgment as a matter of law or if the affidavits or other proof show that there is no genuine issue of fact."

The facts here are undisputed and the law from our examination appears clear. Michigan, having espoused the views on actionable misrepresentation set forth herein, has also refined those views to the point where they are applicable to the case before us. A separate trial on damages will properly follow.

Affirmed. Costs to appellees.

McGREGOR, P. J., concurred with FITZGERALD, J.

T. G. KAVANAGH, J. (*dissenting*). I agree that a duty to speak exists when there is knowledge of an existing condition posing a substantial threat to the enjoyment of the property. I would even agree that a deliberate withholding of the fact of a prior warning might be sufficient evidence of an intent to prevent investigation to support a determination of actionable fraud.

But here—did the appellant deliberately withhold information of the prior warning or did he even think about it? Is the present infestation a new one or did it exist at the time of the sale?

There is no evidence in this record upon which to base logical answers to these questions. I would set aside the summary judgment and refer the matter for trial, and I would award appellant his costs.